## MELVIN *vs.* WINSLOW & *als.*

A. B. attached certain property including a horse. C. D. replevied it, but ulti-mately failed in his action, and judgment was rendered for a return, damages and costs. All the property was accordingly returned, except the horse, which, during the pendency of the two suits, *died*, without the fault or negligence of any one. *Held*, in a suit on the replevin bond, that C. D. was not liable for the value of the horse.

This action, which was debt on a replevin bond was, submitted for the decision of the Court, upon the following agreed statement of facts.

The plaintiff as a deputy-sheriff, having in his hands a writ against *Moses B. Gilman*, in favour of one *Clancey*, attached certain personal property including a horse, estimated to be worth $60. In *July*, 1828, the defendant replevied the property attached, and gave the bond declared on. The replevin writ was entered and prosecuted to final judgment, which was rendered in this Court, *October*, 1829, in favour of the present plaintiff for a return of the property, and damages assessed for the detention, at $31, 87, and costs of suit.

In *December*, 1828, *Clancey*, at whose suit the goods replevied had been attached, recovered judgment in his suit against *Gilman*, for $350, 65. The execution which issued thereon was put into the hands of an officer, who received from the defendants all the property originally attached except the horse aforesaid ; and on the 24*th* of *November*, 1829, sold the same ; but the proceeds were insufficient to satisfy the execution by the sum of $250.

Some months *prior* to the rendition of judgment in the suit, *Clancey v. Gilman*, and while the replevin suit was also pending, the horse *died* without the fault or negligence of any one.

The right of the plaintiff to recover the $31, 87, and costs, was not resisted, but the question was, whether the defendants were liable on the bond for the value of the horse.

*Otis*, for the plaintiff, contended that the loss of the horse should fall on the defendants. They were wrongdoers in in-

Melvin v. Winslow & al.

termeddling with property to which they had no right. *Pike v. Huckins*, 1 *Mass.* 420 ; *Seavey v. Blacklin & al.* 2 *Mass.* 541 ; *Flagg v. Tyler*, 3 *Mass.* 303.

The horse was at their risk. Their bond is to return him *at all events*. The loss therefore, is their loss. *Gordon v. Jenney*, 16 *Mass.* 465 ; *Ladd v. North*, 2 *Mass.* 214.

*Sprague*, for the defendants.

The opinion of the Court was delivered by

MELLEN C. J. — It appears that the horse in question died a natural death, without the fault or negligence of any one, *after* he was *attached* at the suit of *Clancey*, and *before* the action was decided ; but not till *after* the action of replevin was commenced. The question is, whether, according to the true con‑struction of the condition of the replevin bond, the obligors are answerable for the value of the horse. By law, *Melvin*, the officer who served the writ in *Clancey's* action, had an unques‑tioned right to attach the horse and hold him in his custody, until he was taken from his custody by virtue of the writ of re‑plevin. Suppose he had died in the possession and custody of *Melvin*, before the action of replevin was commenced, would he have been answerable ? We are not aware of any principle of law which would render him so. He was answerable for him, to be *seised on execution ;* but if he had died before execu‑tion issued, the plaintiff would not have been liable, unless he had been in fault. Now, had not the defendant, *Winslow*, as good and legal right to take the horse by the writ of replevin, out of the custody of *Melvin*, in order to try his right to the pro‑perty, as *Melvin* had to take him out of the possession of *Gil‑man* towards satisfaction of *Clancey's* debt ? We perceive no distinction. In *both* cases, the act of taking was lawful. And though, when the action was decided against *Winslow*, the law considers him so far a wrongdoer as to compel him to pay dam‑ages, yet *till* that time he was not a wrongdoer, but lawfully engaged in vindicating his asserted rights ; and, as we have before stated, the horse died before the replevin suit was deter‑mined. In the case of *Congdon v. Cooper*, 15 *Mass.* 10, it was stated expressly by the *Chief Justice*, delivering the opinion of

the Court, that " the capture of *Eastport*, where the deputy-
" sheriff lived, and where, according to his duty, the property
" attached would be presumed to remain, would excuse him and
" the sheriff from producing the property, to levy the execution
" upon. But this is because the common consequences of
" capture, according to the laws of war, are supposed to fol-
" low : such as a restraint upon the *persons* of the inhabitants
" captured, which would prevent their removal ; and upon their
" *effects*, so that they could not be *withdrawn from the control*
" *of the captors.*" He then goes on and states, that such was
not, at the time, the situation of *Eastport* and the property
there ; and the sheriff was in that case held answerable. He
had taken good security for them. Surely the *natural death* of
the horse, which withdrew him from the control of *Winslow*, is
as valid an excuse for *him*, as the absolute control of a *captor*
would have been for *Cooper* and his deputy. Our opinion is,
that the obligors are not held for the value of the horse.