# SPEYER *v.* IHMELS & CO.

In an action to recover money in which an attachment has been issued and levied upon property of the defendant, a subsequent attaching creditor may intervene at any time before the entry of judgment for the purpose of contesting the validity of the first attachment.

*Davis* v. *Eppinger* (18 Cal. 378) affirmed on this point.

Speyer v. Ihmels.

Where a subsequent attaching creditor intervenes in an action for the purpose of
setting aside an attachment issued therein, on the ground that there is no debt
due from the defendant to the plaintiff, the allegations in the pleading on the
part of the intervenor traversing the complaint, have the same effect as denials
in an answer and require affirmative proof by the plaintiff of his cause of
action, in default of which the intervenor will have judgment in his favor.

A judgment will not be reversed because of an error which affects the rights of
parties who have not appealed, and not those of the appellants.

Action commenced by attachment to recover an alleged indebtedness, and defend-
ants made default; before the entry of judgment, certain subsequent attach-
ing creditors intervened and contested the validity of the plaintiff's attach-
ment, on the ground that no debt was really due from plaintiff to defendant.
On the issue thus raised the Court found in favor of the intervenors, and
thereupon entered an order setting aside the attachment of plaintiff: *Held*,
that the order was erroneous in entirely setting aside the plaintiff's attach-
ment, and must be modified so as merely to postpone the plaintiff's lien to
that of the intervenors.

Where the merits of the case were not investigated in the lower Court by reason
of an uncertainty as to the proper mode of proceeding under the anomalous
provisions of the Practice Act relating to interventions, the Supreme Court
awarded a new trial, although the decision of the Court below upon the main
question involved was approved, and the only error disclosed might have been
cured by a direction to modify the judgment.

APPEAL from the Sixth Judicial District.

On the tenth day of January, 1861, appellant, Morris Speyer,
commenced a suit against Ihmels & Co. in the District Court, Sixth
Judicial District, for the sum of $5,400, claimed to be due on an
account for goods sold, and caused an attachment to be issued and
levied by the Sheriff of Sacramento County on property of the
defendants in that county. On the same day, and immediately
after the commencement of the suit of Speyer, the intervenors,
Eggers & Co., also commenced an action against the same defend-
ants for $8,500, issued an attachment therein, and had it levied
upon the same property. On the ninth of January, 1861, the
intervenor, E. L. Goldstein, commenced an action against the same
defendants in the Twelfth District Court to recover the sum of
$8,450, and caused an attachment to be issued therein directed to
the Sheriff of the City and County of Sacramento, who levied the
same upon the property previously attached.

The defendants made default in all of these actions. On the
nineteenth day of January, 1861, the intervenors, Goldstein and

19

Eggers & Co., filed in the Sixth District Court, in the case of *Speyer* v. *Ihmels & Co.*, bills of intervention, under the six hundred and fifty-ninth section of the Practice Act, alleging: 1st. That the intervenors were creditors of the defendants for the respective amounts due them, and had caused attachments to be issued and levied upon their property subsequent to the attachments of Speyer; 2d, that Ihmels & Co. were insolvent; 3d, that the claim and demand upon which suit of Speyer is based, is not a joint or partnership debt against defendants, but an individual debt due from one Stockfleth, a member of the firm; 4th, that the pretended claim of Speyer was not due, and no right of action had accrued thereon at the commencement of his action; 5th, that no goods, wares, or merchandise were ever sold or delivered by the plaintiff to defendants as charged in his complaint; 6th, that Speyer's claim was brought forward and his action commenced and prosecuted by a collusion between him and the defendants, for the purpose and with the intent to defraud the creditors of defendants, including the intervenors.

The intervenors prayed that the attachment of plaintiff, so far as the rights of the intervenors were concerned, be set aside and dismissed, and that they be adjudged entitled to the money in the hands of the Sheriff collected upon the sale of the property, and that the Sheriff be directed to pay the same to them *pro rata.* To these pleadings of the intervenors plaintiff demurred, and the demurrer being overruled, filed answers denying all their allegations of fraud. The case was submitted to the Court, a jury being waived. The plaintiff read his complaint, and after proving that he had asked the Clerk for a judgment against said defendants by default, and that the Clerk had refused to enter it, rested.

The intervenors then read their bills of intervention, and introduced in evidence the attachment papers in their respective cases and the Sheriff's return upon their writs, and also the judgments recovered in said actions for the amounts sued for, and rested.

The plaintiff introduced no further proof. The Court rendered judgment in favor of the plaintiff, and against the defendants, for the amount sued for; and in favor of the intervenors so far as to set aside and discharge the plaintiff's attachment, and to order the

Sheriff to pay to them the money in his hands. From this judg-
ment the plaintiff appeals.

*F. Hereford*, for Appellants.

I. The demurrer to the bills of intervention should have been
sustained. The petitioners simply show that they were contract
creditors. In the language of this Court in the case of *Horn* v.
*The Volcano Water Company et al.*, (13 Cal. 69) the interven-
tion "is only an attempt of one creditor to prevent another creditor
obtaining judgment against the common debtor." Our statute very
plainly and distinctly points out in what cases a party may inter-
vene. It says: "A party shall be entitled to intervene in an
action who shall have an interest in the matter in litigation." (Pr.
Act, sec. 659.) Now what is the matter in litigation in the pres-
ent case? It is simply whether the plaintiff shall have judgment
for his debt. The intervenors have no interest in that question
within the meaning of the statute. If this were a replevin suit, or
any other kind of suit by which plaintiff sought to obtain possession
of certain specific property, a party upon making a proper showing
might intervene. It was for such a class of cases only that the
statute intended to provide. (*Gasquet* v. *Johnson*, 1 Louisiana,
431.) Would the intervenors gain or lose by the direct legal effect
of the judgment? Certainly not. In *Horn* v. *Volcano Water Co.*
this Court use the following language: "To authorize an interven-
tion, therefore, the interest must be that created by a claim to the
demand, or some part thereof in suit, or a claim to or lien upon the
property, or some part thereof, which is the subject of litigation."
Now did the intervenors "have a claim to the demand?" This is
not pretended. · Did they have any claim to or lien upon the prop-
erty which was the subject of litigation? Certainly not. There
was no property in litigation as between Speyer and his debtor,
Ihmels & Co. The only question in dispute was, did Ihmels & Co.
owe Speyer so much money, in which the intervenors had no such
interest as would allow them to intervene.

II. The Court erred in setting aside Speyer's attachment, and
ordering the proceeds of the property attached to be paid over
to the intervenors. The affirmative was not on Speyer. The

Speyer *v.* Ihmels.

bill of intervention is treated by our statute and the decisions of our Courts as a complaint. (Prac. Act, sec. 661 ; *People* v. *Talmage*, 6 Cal. 256.)    At the time of trial both parties stood on an equal footing—neither party offering any evidence.    It is true the intervenors had their judgments.    Speyer did not have his judgment for the reason that the Clerk refused to enter it up.    The intervenors introduced no evidence to support any one of the allegations in their complaint of intervention ; the Court had no more right to presume against the *bona fides* of our claim than that of the intervenors.    To the bill of intervention Speyer filed his answer denying all their charges of fraud, etc.    It was necessary for the intervenors to allege certain facts in order that they might gain a status in Court.    It was certainly necessary then for them to substantiate those facts in order to maintain that status.    If it was necessary for them to allege those facts it certainly was necessary for them to prove them.    The intervenors had the affirmative of the issue before the Court, and the *onus probandi* was on them. (1 Greenl. Ev. sec. 74.)    The intervenors ground their right upon an affirmative allegation of fraud and collusion ; that they must prove for the law never presumes fraud.    (Id. sec. 80 ; *Ford* v. *Metayer*, 10 Martin, 436 ; *Turnbull* v. *Martin*, Id. 419 ; Philips' on Evidence, C. & H. Notes, 3d ed. 641, 649, 652 ; 18 Johns. 403 ; 1 Washington, 306, 330 ; 7 Cow. 701.)

*Geo. R. Moore* and *E. B. Crocker*, for Respondents.

I.    Respondents had a right to intervene.    (*Davis* v. *Eppinger*, 18 Cal. 378 ; *Brooks* v. *Hager*, 5 Id. 281 ; *Yuba County* v. *Adams & Co.*, 7 Id. 35 ; *Dixey* v. *Pollock*, 8 Id. 570 ; *Horn* v. *Vol. Water Co.*, 13 Id. 68.)

II.    We deny in our petitions of intervention that the plaintiff ever sold or delivered any goods, etc., to the firm of Ihmels & Co., or that they are indebted to him jointly in any amount whatever, but, on the contrary, we aver that all of the plaintiff's transactions were with Stockfleth, one of the partners, individually, and that he alone is liable.    Here is a distinct issue of fact for the Court to determine ; and unless the plaintiff can show that he did sell and deliver goods, etc., to the firm, he cannot recover in this action,

Speyer *v.* Ihmels.

and, of course, would not be entitled to the partnership assets. If it were true that the plaintiff sold these goods to the firm of Ihmels & Co., he could easily have shown that fact, while it would have been the next thing to impossible for us to have shown that he did not. The true rule is, that an intervenor must establish the affirmative allegations in his bill, as against either party, but when he " unites with the defendant in resisting the claims of the plaintiff," and denies the averment in the plaintiff's complaint, he stands with and to this extent occupies the place of the defendant, and with respect to these issues, the plaintiff must make out his case affirmatively or he will fail. The language of the statute clearly fixes the relative positions of the parties. The intervenor may " unite with the defendant in resisting the claims of the plaintiff." That is, he may become a defendant in the intervention, and then, of course, he will occupy the same position with respect to the plaintiff as any other defendant occupies, and it would be a radical change, indeed, in the practice to hold that a plaintiff should not be required to make out an affirmative case when each averment in his complaint is specifically denied.

In Louisiana, where the statute is very similar to ours, the Courts hold that bills of intervention, so far as they traverse the complaint, must be regarded like the answer of a defendant, and put in issue the plaintiff's allegations. (*Neal* v. *Fesperman*, 1 Jones, [La.] 446.)

This Court took the same view in the case of *Horn* v. *The Volcano Water Co. et al.* (13 Cal. 70). In that case the Court said: " Looking, then, to the position of these judgment creditors, and treating it. as an answer to the complaint, and the parties as asserting a priority in the liens of their several judgments over the lien of the mortgage," etc.

In the case of *Davis* v. *Eppinger* (18 Cal.)—Kloppenstein intervening—which was similar in all of its material parts to the case at bar, this Court held substantially the same rule. (See, also, 1 Greenleaf's Ev. sec. 74; *C* and *H*, notes to Philip's Ev. 810.)

NORTON, J. delivered the opinion of the Court—FIELD, C. J. concurring.

This is a case arising under the provisions of the Civil Practice Act relative to interventions.

On the tenth of January, 1861, the plaintiff commenced his action, and caused an attachment to be levied upon the property of Ihmels & Co. On the same day Eggers & Co. commenced an action against the same defendants, and caused an attachment to be levied upon the same property, but subsequent to the plaintiff's levy, and in due course obtained judgment. On the day previous E. L. Goldstein had commenced an action against the same defendants, and caused an attachment to be levied upon the same property, but also subsequent to the plaintiff's levy. Before a default was entered against the defendants in this action, E. L. Goldstein and Eggers & Co. severally filed interventions setting forth these facts, and also averring that the property attached was only sufficient to satisfy the plaintiff's claim, and also charging that the plaintiff's demand was not due at the time he commenced his action, and also that he had no valid demand against the defendants, and that his action was prosecuted for the purpose of hindering and defrauding creditors of the defendants. A general demurrer was interposed to these complaints of intervention; that is, that the facts set forth do not constitute a cause of intervention. The demurrer was overruled, and then the plaintiff answered the interventions, and upon the action coming on for trial, after the intervenors had made proof of their attachment proceedings, and the plaintiff had shown the default of the original defendants, each party moved the Court for judgment in his favor, without giving further evidence, and thereupon the Court found in favor of the plaintiff against the defendants and in favor of the intervenors against the plaintiff, and adjudged that the plaintiff recover the amount of his demand against the defendants, and that his attachments be set aside, and that the Sheriff pay over the money in his hands to the intervenors *pro rata*. From this judgment the plaintiff appeals. The two main points presented are: 1st. Whether the facts show a case for a proceeding by intervention; and 2d, whether the *onus probandi* was on the plaintiff to prove his cause of action as between him and the intervenors, or on the intervenors to prove their cause of action against the plaintiff.

The provisions of the Practice Act relating to interventions were not a portion of the system of proceedings in civil cases as originally enacted, but were adopted in 1854 from the laws of Louisiana. In a case like the present, before the introduction of these provisions, and as doubtless may still be done, the proceedings would have been by a separate action in the nature of a bill in chancery, as in the case of *Heyneman* v. *Dennenberg*, (6 Cal. 376) or by motion to the Court, as in the case of *Dixey* v. *Pollock* (8 Id. 570). But in the case of *Davis* v. *Eppinger*, (18 Id. 378) where the facts were like those in this case, it was decided to be a proper case for intervention. Although the intervenors have not a claim to or lien upon any property which is the direct subject of litigation in this action, they have a lien upon property which is held subject to the results of the litigation, and which would be lost to the intervenors if the original action should proceed to judgment and execution. If the case does not fall within the precise definition of the cases in which intervention takes place, as given in section six hundred and fifty-nine, and as explained in the case of *Horn* v. *Volcano Water Works*, (13 Cal. 62) it is substantially within the object provided for by that section, and as that is a law only regulating modes of procedure and not affecting rights of property, we think the interpretation given to it in the case of *Davis* v. *Eppinger* should not be changed.

The second point, we think, is also controlled by the decision which establishes the right to intervene. The ground upon which the intervenors are allowed to become parties to this action is, that by reason of their lien upon the property attached, they are interested in preventing the plaintiff recovering a judgment. They are for this purpose defendants in the action, and as the allegations in their complaint, aside from those made for the purpose of showing their right to intervene, are in effect a denial that at the time the plaintiff brought his action and attached the property he had any cause of action, in order to obtain a judgment, so far as they were interested, after they had proved the facts alleged to show their right to intervene, he was required to prove his cause of action. Although in the case of *Davis* v. *Eppinger* and in the case of *Horn* v. *The Volcano Water Co.* (13 Cal. 70) it was decided that

judgment might be rendered against the original defendants, it was because under our system the Court by its judgment can make various dispositions to meet all the exigencies of the case, and thus allow the plaintiff to recover a judgment against those defendants and at the same time control the judgment so far as it would affect the intervenor's liens upon the property.

The objection that the judgment should not have directed the money in the Sheriff's hands to be paid to the intervenors *pro rata*, cannot avail the appellant, because it is a matter in which he is not interested, and those who are interested in it have not appealed.

But a judgment having been rendered for the plaintiff against the original defendants, that portion of the judgment which sets aside the plaintiff's attachment absolutely was erroneous. It should only have been postponed to those of the intervenors. In this respect the judgment must be modified.

The record in this case appears to have been made up amicably between the attorneys, and some of its defects supplied by stipulations, and neither in the grounds of error or in the briefs is any distinction taken between the cases of the intervenors, although there appears to be a difference which might have required a modification of the form of the judgment, but not in a matter affecting the substantial rights of the plaintiff, who alone has appealed.

The cause must be remanded to the Court below, with directions to modify the judgment by striking out that portion which directs the attachment of the plaintiff to be set aside, and by directing the money in the Sheriff's hands to be applied first to the payment of the judgments of the intervenors *pro rata*, and the surplus, if any, to the payment of the plaintiff's judgment. Each party to pay his own costs on appeal.

On rehearing NORTON, J. delivered the opinion of the Court— FIELD, C. J. concurring.

We granted a rehearing in this case principally for the purpose of considering whether our decision might not be modified so as to allow the parties a new trial. The merits of the case were not investigated, and as this was occasioned by an uncertainty as to the

proper mode of proceeding under the anomalous provisions of the Practice Act relating to interventions, we think there should be a new trial.   In other respects we adhere to our opinion as heretofore expressed.

The judgment is, therefore, reversed and the cause remanded for a new trial.   The costs of this appeal to abide the event.