[No. 8,091.—Department Two.]
July 25, 1882.

## GENEVA DE THOMAS v. O. S. WITHERBY ET AL.

REPLEVIN—DESTRUCTION OF REPLEVIED PROPERTY BY ACT OF GOD PENDING ACTION.—A plaintiff not being the owner of goods, who replevies them from the real owner, holds them in his own wrong and at his own risk, and when judgment is rendered against him for the return of the property or its value, he can not be excused from satisfying the judgment under a plea that the property has been lost in his hands, even by act of God.

APPEAL from a judgment for defendants in the Superior Court of the County of San Diego. McNEALY, J.

*Brunson & Wells*, for Appellant.

Does the fact that these cattle, after trial and before judgment, without fault or neglect upon our part, sickened and died, under the circumstances stated in the complaint, entitle appellant to relief against the writ issued to enforce their return to respondents, or the collection of the sum of one thousand and forty dollars, their adjudged value? (C. C. §§ 3526–3531; *Porter* v. *Miller*, 7 Tex. 473; *Carpenter* v. *Stevens*, 12 Wend. 589.)

Had the cattle died while in the hands of the officer, without fault or negligence upon his part, the authorities all agree that the loss would then have been that of the owner, Charles Thomas. Now, we contend, that the same principle which exonerates the officer from liability, applies to the plaintiff and appellant in this case, and fully entitles her to be relieved against the enforcement of the writ complained of.

The property having been attached by the sheriff as the property of Charles Thomas, and the action in replevin being against the sheriff, as such, the questions arising in this case are different from those arising in an ordinary action of replevin. In ordinary cases, the property is not in the custody of the law by virtue of process, but in the possession of one of the claimants—each party claiming in his own right. In this case the sheriff did not claim the property in his personal, but in his official capacity. He traced his only right to the property through Witherby's attachment. The giving of the statutory bond, and replevying of the property, did not destroy the attachment lien. (*Hurt* v. *Robinson*, 11 Cal. 272; *Hagan* v. *Lewis*, 10 Pet. (U. S.) 400–404; *Lockwood* v. *Perry*, 9 Metc. (Mass.) 444; *White* v. *Dolliver*, 113 Mass. 400; Crocker on Sheriffs, §§ 431, 449.)

" The effect of the replevin bond is simply to give the party possession of the property pending the litigation. The title is not changed. No sale by the party in possession, and who afterwards turns out to have no right to the property, can convey any title to the purchaser. * * * The property remains in the custody of the law, and all parties must take notice." (*Hunt* v. *Robinson*, 11 Cal. 272–277; *Bruner* v. *Dyball*, 42 Ill. 37 ; *Stevens* v. *Tuite*, 104 Mass. 332; *Miller* v. *White*, 14 Fla. 435 ; *Milliken* v. *Selye*, 6 Hill, 623 ; Wells on Replevin, Sec. 460 ; *Hunt* v. *Robinson*, 11 Cal. 262 ; *Jones* v. *McGuirk*, 51 Ill. 382 ; *Browning* v. *Hanford*, 5 Hill, 588–591 ; S. C., 40 Am. Dec. 369; *Moore* v. *Westervelt*, 27 N. Y. 234; Sherman and Redfield on Neg., Sec. 530 ; *Bridgers* v. *Perry*, 14 Vt. 262; *Price* v. *Stone*, 49 Ala. 543–550.)

*Chase, Arnold & Hunsaker*, and *Leach & Parker*, for Repondent.

The complaint is drawn upon the theory, that the inevitable destruction of the property, pending the action, is: first, a defense in a suit on the replevin bond ; second, a defense to the defendants' claim for a return of the property or for its value, when proven at the trial; and, third, an equitable satisfaction of the judgment for its return or for its value, in case a return can not be had, when not proven at the trial. We deny that either of said propositions is law, or founded on just, true or

correct legal principles: although the first two of them are supported by the following cases, to-wit: *Carpenter* v. *Stevens,* 12 Wend. 589; *Melvin* v. *Winslow,* 10 Me. 397.

Sedgwick, in his work on the Measure of Damages, at marginal page 500, in reference to the case of *Carpenter* v. *Stevens,* says: "This decision was based on the old rule, that if the condition of a bond become impossible by the act of God, the penalty is saved. But it seems contrary to principle, and has been expressly disapproved." (Citing *Suydam* v. *Jenkins,* 3 Sandf. S. C. R. 614; Wells on Replevin, § 600; C. C. P. § 667; *Brown* v. *Johnson,* 45 Cal. 76; Sedgwick on Damages, 498; *Bruce* v. *Learned,* 4 Mass. 614.)

MORRISON, C. J.:

Appeal from final judgment in favor of defendants, on demurrer to the complaint. The following are the material facts in the case:

In March, 1869, Witherby commenced an action in the District Court of the Eighteenth Judicial District, against one Charles Thomas, for the recovery of the sum of twenty-five hundred dollars, and procured an attachment to be issued therein which was levied upon certain cattle including forty-five head of California stock, and two animals known as "graded cows," the latter being of the value of one thousand and forty dollars, and the entire value of the property being one thousand nine hundred and forty dollars. This action was prosecuted to judgment against Charles Thomas. Soon after the seizure of the cattle under the writ of attachment, the plaintiff in this case commenced an action in the same Court against Witherby and the defendant Coyne (Sheriff of San Diego County) for the recovery of the property attached, the plaintiff in said action claiming to be the owner and entitled to the possession of the cattle. The action was prosecuted to judgment, and it was adjudged and determined therein that the plaintiff, Geneva de Thomas, was the owner and entitled to the possession of all the property in controversy, except forty-five head of California stock valued at nine hundred dollars, and two cows known as "graded stock" of the value of one thousand and forty dollars, and as to these cattle it was adjudged and determined by the Court that they

were at the time they were taken out of the possession of the Sheriff, the property of Charles Thomas. The judgment of the Court in respect thereto was that "the said defendants, Joseph Coyne and O. S. Witherby, have and recover of and from the plaintiff (Geneva de Thomas) said forty-five California stock and said two graded cows, if a return thereof can be had, and in case a return can not be had, that they have and recover from said Geneva de Thomas the sum of one thousand nine hundred and forty dollars—that being the value thereof, and damages assessed at one dollar, with costs of suits."

It is further alleged in the complaint that on the nineteenth day of August, 1880, Joseph Coyne and O. S. Witherby procured to be issued from the Superior Court (the successor of the former District Court) a writ of execution in the action of Geneva de Thomas against them, directed to T. C. Stockton (another defendant herein, the Coroner of San Diego County), commanding and requiring him to take and deliver to said Coyne and Witherby the possession of the forty-five head of California cattle and the two graded cows, or, in case delivery thereof could not be had, to make the sum of one thousand nine hundred and forty-one dollars out of the personal property of Geneva de Thomas, if sufficient personal property of hers could be found, otherwise to make that amount out of the real property belonging to her, situate in the County of San Diego, which execution was delivered to the defendant, Stockton.

It is further alleged in the complaint that on the third day of September, 1880, Witherby and Coyne elected to take, and the plaintiff in this action elected to pay the sum of nine hundred dollars in lieu of the return of the forty-five head of California stock—that sum being the value thereof as fixed by the judgment of the Court—and that sum was accepted and received in satisfaction *pro tanto* of the execution issued on the judgment in the action of replevin, leaving the execution in the hands of the Coroner unsatisfied as to the two graded cows and the sum of one thousand and forty dollars, fixed by the judgment of the Court as the value thereof.

It is also charged in the complaint that the Coroner now threatens to execute the writ and to enforce the execution of the judgment for that part of it which remains unsatisfied.

" Plaintiff further states and shows that she resides about one hundred miles from the county seat of San Diego County; that after the trial and submission of said action of *Geneva de Thomas* v. *O. S. Witherby and Joseph Coyne*, and before the rendition and docketing of said judgment, or the issuing of said writ of execution, to wit: on or about the twenty-ninth day of January, A. D. 1880, the said two cows known as ' graded stock,' died, thereby rendering it impossible for plaintiff to return said cattle to said defendants; that said two cattle, from the time they were so delivered to her by said Sheriff as aforesaid, up to the time of their death, remained in the care and custody and possession of plaintiff, and during all of said time, they at all times continuously received all prudent, proper and necessary care, and that the death of said cattle, and each thereof, was caused by the act of God, and did not occur by any default, abuse, neglect, mismanagement or want of care on the part of this plaintiff, or of any other person.

"Wherefore, plaintiff asks the judgment of this Court directing return of said execution without further levy or proceedings against plaintiff thereunder; that no further, or other writ ever issue upon said judgment, and that plaintiff be adjudged and decreed to have fully done and performed all the acts on her part to be done and performed, and be wholly absolved from further costs or liability by reason of said judgment, and that defendants, and each and all of them, be forever enjoined from any further proceedings thereunder, and for such further and other relief in the premises as shall be agreeable to equity and good conscience, and for costs of suit."

To the complaint a demurrer was interposed on behalf of the defendants, which was sustained, and the plaintiff declining to amend, a final judgment was entered thereon. From that judgment plaintiff prosecutes this appeal.

There are two questions presented in this case, the first of which is, do the matters set forth in the complaint entitle the plaintiff to any relief whatever, and second, if they do, will a Court of equity grant relief under such a state of facts as the complaint sets forth ? In other words, was the plaintiff not obliged to apply in some mode or other for relief to the Court in which the action of replevin was pending, and by a pro-

cceding in that case? It is suggested on behalf of the respondents that if the rights of the parties were in any manner affected by the death of the graded cows, it was the duty of the plaintiff to have brought that fact properly before the Court prior to the rendition of the judgment, if there was time to do it, and if the plaintiff did not have an opportunity before judgment, then she should have made her application for a new trial, upon proper showing, by affidavit.

In the view we have taken of the case it will not be necessary, however, for us to pass upon the latter question. The action of the plaintiff was brought under Sections 509 and 510 of the C. C. P., which provides for actions to recover the possession of personal property, and the delivery thereof to the plaintiff. It is a statutory proceeding analogous to the common law action of replevin, and by Section 667 of the same Code it is provided that "if the property had been delivered to the plaintiff, and the defendant claims a return thereof, judgment for the defendant may be for a return of the property or the value thereof, in case a return can not be had."

When it appears on the trial that the property has been destroyed, that it no longer exists in *specie,* and can not, therefore, be returned, a judgment for damages alone will not be reversed. (*Brown* v. *Johnson,* 45 Cal. 76.)

In some of the cases to which we have been referred, it has been held that the plaintiff, who obtains the possession of personal property by replevin, is excused from returning the same in case it has died since the seizure, without any neglect or default on the part of the party taking it. This was the doctrine laid down by the Supreme Court of New York in *Carpenter* v. *Stevens,* 12 Wend. 589. It was there held that " when property taken by virtue of a writ of replevin is a living animal, and there is a judgment of *retorno habendo,* in an action on the replevin bond for a breach of its condition, it is a good plea in the bar that before the judgment in the replevin suit, the animal *died* without the default of the plaintiff in such suit; " and to the same effect is the case of *Melvin* v. *Winslow,* 10 Me. 397. But an examination of more recent cases and later authorities, convinces us that the above cases do not lay down the correct rule on this subject.

The case of *Carpenter* v. *Stevens, supra,* was considered by the Superior Court of New York in the case of *Suydam* v. *Jenkins,* 3 Sandf. 614, where it is said; "The inferences that have been stated seem to follow in a logical sequence, and if the decision in *Carpenter* v. *Stevens,* were admitted to be law, we should find it difficult to resist them. But this admission we can not make. The decision is one of those which we regret, but are constrained, to say, we can not follow. It appears to us to be wrong in principle, and it is plainly contradicted by many authorities. The undertaking of the plaintiff in the replevin bond, we conceive is absolute to return the goods or pay the value at the time of the execution of the bond. We can not think that a wrong-doer is ever to be treated as a · mere bailee, and that the property in his possession is to any extent at the risk of the owner. * * * A plaintiff who without right or title has seized the property of another by writ of replevin, is as much a wrong-doer as a defendant in trover. No reason can be given why his liability should be less extensive; and in fact, when the replevin suit is terminated, although he can not be treated as a trespasser, he may be sued in trover at the election of the defendant. (*Yates* v. *Fassett,* 5 Denio, 21.) The decision in *Carpenter* v. *Stevens,* is plainly inconsistent with the prior decision of the same Court in *Rowley* v. *Gibbs,* 14 John. 385, in which the defendants in a replevin suit, in addition to a return of the goods, were held to be entitled to damages for a deterioration in their value, from the time of the replevin, although it was not pretended that the decrease in value was attributable in any degree to the act or default of the plaintiff; and it is irreconcilable with the numerous cases in which it has been held expressly, or by a necessary implication, that in a suit upon the replevin bond, the value of the property, as fixed by the penalty of the bond, is, at the election of the plaintiff, the true measure of damages." (Citing *Mattoon* v. *Pearce,* 12 Mass. 406, and numerous other cases.)

The case of *Carpenter* v. *Stevens,* is referred to with disapprobation by Wells in his recent work on Replevin. He says: " Questions frequently arise as to the effect the death or destruction of the property pending the suit, will have on the

rights of the parties.  Upon this question the authorities, with few exceptions, can be easily harmonized.  It was said in a New York case that when the property sued for is a living animal, and it dies it is a good plea to say that it is dead. This ruling was based upon the idea that the return had become impossible by act of God; but the ruling has been questioned more than once.  To permit a defendant who wrongfully takes possession, to claim that he holds it at the risk of the real owner, and not at his own, and claim immunity for accident, would be unjust in the extreme.  The wrongful taker of property, when called upon to surrender it to the rightful owner or pay the value, can not defend himself from judgment by showing his inability to deliver it through death or otherwise." (Secs. 600, 601.)  The death of slaves, pending the action for them, has often been held not to defeat the plaintiff's right to a judgment for them or their value.  (Id. Sec. 602; see *Carrel* v. *Early*, 4 Bibb. 270 ; *Caldwell* v. *Fenwick*, 2 Dana. 333 ; *Scott* v. *Hughes*, 9 B. Monroe, 104 ; Drake on Attachment, Sec. 341; *Hinkson* v. *Morrison*, 47 Iowa, 167.)

Sedgwick in his work on Damages, vol. 2, marginal page 500, also refers with disapprobation to the case of *Carpenter* v. *Stevens*, and says : " In a case in New York it was decided in a suit on the replevin bond that the non-return of the property was excused by its inevitable destruction before judgment.  This decision was based on the old rule that if the condition of a bond became impossible by the act of God, the penalty is saved.  But it seems contrary to principle, and has been expressly disapproved of.  As between parties to a contract it seems very reasonable that all interested in its execution should bow to the Superior Power which renders its performance impossible.  But it can not be contended that a wrong-doer should be excused by any subsequent event.  Nor do the analogies of the law justify any such decision."

In the case of *Mills* v. *Gleason*, 21 Cal. 280, the Court say : " A failure to prosecute (replevin) is a breach of the undertaking, and the legal and necessary result is that the sureties to the undertaking are liable for whatever injury the defendant has sustained."

It seems to us that the principle laid down by the Court in the case above referred to (45 Cal. 76), is applicable here, and is decisive of the present case. There the judgment was for the value of the property and damages merely, and the Supreme Court, assuming that it appeared to the Court in which the case was tried, that the thing could not be returned, for the reason that it had been destroyed, sustained the judgment.

Perhaps we have given to this case a more elaborate examination than was necessary, but in view of the conflict in the authorities it did not seem improper to refer in some detail to them. The weight of authority is manifestly against excusing the party who has replevied goods from returning the same or responding in damages for their value, because they have been lost by the act of God, and it appears to us that upon no sound principle can he be excused. A plaintiff not being the owner of goods who takes them out of possession of the real owner, holds them in his own wrong, and at his own risk. He has deprived the real owner of the possession, and has also deprived him of the means of disposing of the property pending the litigation; and when at the end of perhaps a protracted litigation, it is determined that the plaintiff in the replevin suit had no right to the possession of the goods, and judgment is rendered against him for the return of the property, or its value, he can not, on principle or authority, be excused from satisfying said judgment under a plea that the property has been lost in his hands, even by the act of God.

The demurrer to the complaint was properly sustained, and the judgment must be affirmed.

So ordered.

MYRICK and SHARPSTEIN, JJ., concurred.