IN THE

# SUPREME COURT OF THE STATE OF GEORGIA

## AT AMERICUS,

### JULY TERM, 1852.

Present—JOSEPH H. LUMPKIN }
HIRAM WARNER, } Judges.
EUGENIUS A. NISBET. }

No. 56.—GEORGE FIELD and others, plaintiffs in error, *vs.* SEA-
BORN JONES and JOHN SCHLEY, defendants in error.

[1.] A bill being filed to subject certain property in the hands of a third per-
son, to the payment of judgments in favor of the complainants, and a
receiver being appointed to collect and hold the rents, issues and profits ;
the bill was demurred to for want of equity, and the demurrer sustained
and bill dismissed : *Held,* that the functions of the receiver ceased *inter
partes,* but that his amenability continued, as an officer of the Court, to the
Court, and that the fund itself was subject to the order of the Court, and
would rightfully return to the party as whose fund it was taken and im-
pounded, unless retained upon a claim properly made known and presented
to the Chancellor.

[2.] *Held,* also, that a party having a claim upon a fund so situated, will be
heard before the Chancellor *pro interesse suo,* upon a proper application
made ; and that he will pass such order as will comport with the rights
of all parties in interest.

[3.] *Held,* that a receiver is but the officer of the Court—that his possession
is the possession of the Court, and that he is not subject to the process of
garnishment.

Field and others *vs.* Jones and another.

In Equity, in Muscogee Superior Court. Decision by Judge Powers, November Adjourned Term, 1851.

Seaborn Jones and John Schley filed a bill in the Superior Court of Muscogee County, charging that they were creditors by judgment, against the Southern Life Insurance and Trust Company of Florida, located beyond the limits of this State; that George Field, its former Cashier, had procured titles in himself to certain real estate in the City of Columbus, which really belonged to the said company; that Philip T. Schley, as the agent of Field, was controlling the property and receiving the rents, issues and profits. The prayer was, that the property and the rents and issues thereof, be appropriated to the payment of the debts of complainant. Afterwards, by consent, Philip T. Schley was appointed receiver to receive the rents and issues of the property.

Subsequently a demurrer was filed to the said bill for want of equity, which being overruled, was by writ of error carried to the Supreme Court—where the demurrer was sustained and the bill ordered to be dismissed. By order of the Superior Court, Philip T. Schley made return of the amount in his hands as receiver, whereupon counsel for Field moved an order, requiring Schley the receiver, to pay over to the counsel for Field, the amount in his hands. Counsel for Jones and Schley, and the receiver himself, resisted the granting of this motion, on the ground, that since the dismissal of said bill summons of garnishment had been served on the said Field by the said Jones and Schley, and also by other creditors of the Southern Life Insurance & Trust Company.

The Court refused to grant the order as moved, but passed the same, with the addition, or condition, that the assignees of Field should execute and deliver to the said receiver, a bond in the sum of fifteen thousand dollars, conditioned to refund the amount paid over by him, in the event he is made liable on the garnishment pending against him.

To this order and decision counsel for Field excepted, and this decision is assigned as error.

W. Dougherty, for plaintiff in error.

Benning & H. Holt, for defendant.

*By the Court.*—Nisbet, J. delivering the opinion.

[1.] The bill, by virtue of which Mr. Schley was appointed receiver and came into the possession of this fund, was dismissed upon demurrer—the legal consequence of which was, to dispense with the functions of the receiver as a depository of the parties litigant. His duties ceased with the termination of the litigation between the parties to the bill, and that ceased when it went out of Court upon the demurrer. But his relations to the Court of Chancery from which he received his appointment did not determine—his amenability to that Court as receiver, continued. That is to say, he was still an officer of the Court. His possession of the fund was the possession of the Court. Both he and it, were subject to the order of the Court. Upon the determination of the litigation for the purposes of which he was appointed, the money which he had received by natural equity, and according to the course of Chancery jurisdiction, belonged to the party, *Fields,* as whose money it had been seized and impounded. The decision on the demurrer, determining that the complainants in the bill had no equity, determined also, that the fund in question had been wrongfully placed in the custody of the receiver. This being so, it was the duty of the Chancellor to order it to be paid to *Fields* or his assignees, without conditions, unless withheld from so doing by the claim of other persons, rightfully and according to the forms of Chancery proceedings, brought to his cognizance. In accordance with these views, it seems that the assignees of Fields, Messrs. Iverson, Dougherty & Hargrave, exhibiting their title as such, moved the Court that the money in the hands of the receiver, Mr. Schley, be paid to them. Messrs. Jones & Schley, who are judgment creditors of The Southern Life Insurance & Trust Company, and also the receiver himself, resisted this motion, showing for cause against it, that summons of garnishment had issued in their favor and had been served upon the receiver, since the dismissal of the bill; and claim-

ing that the money which had come into *Schley's* hands as receiver, should not be paid over to *Iverson, Dougherty & Hargrave*, but remain subject to their recovery on the garnishment. Was the service of garnishment on the receiver, sufficient to justify the Chancellor in denying the motion of the assignees of *Fields?* Was this such an exhibition 'of a claim upon the fund as would defeat the equitable right of *Fields*, and prevent the return of the money to him or his assignees? The presiding Judge ruled, that the money be paid to them, upon their giving bond and security to the receiver, conditioned to refund the same, in the event that he should be made liable upon the garnishment. The Judge erred in annexing the condition of the bond to refund.

[2.] That a claimant upon a fund so situated shall be heard, and that the Chancellor will protect the equitable rights of such claimant, there can be no question. According to the English practice, when a party is interested in a fund, or in property in the possession of a receiver, he can be heard before the Master, upon a proper application, *pro interesse suo,* and he will protect the rights of such party by such order as may comport with the rights of all parties, subject to the review of the Chancellor. *Story's Eq. Ju.* §§833, 891. 9 *Vesey R.* 338. 1 *Keene's R.* 749. The Chancellor here will do the same.

[3.] But he will not regard the pendency of a process of garnishment against the receiver, as such an exhibition of an interest in the fund as will justify him in passing an order to hold the fund up to await the result of that process. The receiver is not subject to garnishment. The process against him is a nullity, and the Chancellor must so regard it. If it be a nullity, then there is nothing before him which evidences a claim upon the fund; nothing to prevent the fund from taking that course which the principles of Equity give to it—that is, nothing to prevent its going back to the original owner. When there are adverse claimants upon a fund put into the possession of a receiver, whilst for the purposes of controlling the fund, the possession of the receiver is the possession of the Court; yet when the litiga-

tion is determined, the right to the possession is in him who final-
ly prevails.   *Story's Eq. Ju.* §833.   3 *P. Williams' R.* 379.

Upon this principle it is, that when the bill was dismissed which
deposited this money in the hands of *Mr. Schley*, it became, h e
prevailing, the right of *Fields* to have it paid over to him.   There
being then, I repeat, nothing before the Chancellor which would
authorize any farther  retention of it, he had no alternative but
to order  it to be paid  to him or  his assignees, unconditionally.
The receiver is not at liberty to bring or defend actions without
special leave of the Court.   He is but the agent of the Court and
cannot involve it in litigation.   He could not defend this gar-
nishment but by leave of the Court.   If such leave were grant-
ed, it would be a descent of the Court of Chancery into a Court
of Law, there to become a litigant about a  fund over which it
has itself jurisdiction.   For the Court of Chancery, and not the
receiver, would be the party.   It is true, that where the  question
to be tried is pure matter of title to property in  possession of a
receiver, the Court  will generally, from  motives of  justice and
convenience, authorize a  suit to be brought, taking care,  how-
ever, to  give such  directions  as  will  protect the possession.
*Story's Eq. Ju.* §833.   9 *Vesey*, 338..  1 *Jac. & Walk.* 178.   1
*Coxe's R.* 422.

But where the question is as  to the appropriation of a  fund,
it is not to be credited  that a  Court of Chancery will yield its
own unquestioned jurisdiction,  and take its  place at the bar of
a Court of Law as a party.   The possession of  the  receiver is
deemed the possession of  the Court, and the Court will not per-
mit itself  to be made a suitor in  a Court of Law.   *Story's Eq.*
*Ju.* §§833, 891.

Another very obvious reason why a receiver is not subject to
garnishment is, that such liability would defeat the ends for which
receivers are appointed.   His duties as  receiver  would  be de-
feated by judgments at Law on garnishment, and the beneficial
jurisdiction of Chancery, in this regard, divested.

So we think the Court erred in requiring the bond to be giv-
en, and reverse the judgment.