[No. 3057. Decided November 22, 1898.]

Russell & Company, *Appellant,* v. J. P. Millett, *Garnishee Defendant,* Metcalf Shingle Company *et al., Respondents.*

SERVICE OF PROCESS — DISQUALIFICATION OF SHERIFF — BY WHOM SERVED — RECEIVERS — LIABILITY TO GARNISHMENT.

The fact that a private individual, when serving a writ of garnishment upon the sheriff, requested an acceptance in writing, which was refused, and afterwards, upon the sheriff's suggestion, has service made by the coroner, does not prove a waiver of the original service.

Under the statutes of this state (Code 1881, § 2776, as amended by Laws 1897, p. 21; and Code Proc., § 796), where the sheriff of a county is disqualified from acting by reason of being a party to the action, a writ of garnishment may be served upon him by a private individual.

Where the case in which a receiver was appointed has been settled or dismissed and no further duty remains to the receiver than to turn over the money and property held by him to the parties entitled thereto, the property in his hands as receiver is liable to garnishment.

Appeal from Superior Court, Skagit County.—Hon. Jesse P. Houser, Judge.   Reversed.

*James Wickersham,* for appellant.

*E. C. Million,* for respondents.

The opinion of the court was delivered by

Dunbar, J.—A suit had been begun by Russell & Co., the appellants herein, against the Metcalf Shingle Company, in the superior court of Skagit county.  On the 24th day of November, 1897, a writ of garnishment was issued out of the clerk's office, directed to the defendant —one of the respondents here—J. P. Millett.  The writ was delivered to one Callahan, who was appointed by

Russell & Co. to serve the same, Callahan being a competent person to serve said writ if it could be served by a private individual. At the hour of 1:30 p. m. on that day, Callahan delivered the original writ and a copy to Millett, and requested him to write an acceptance of service of the original. Millett did not accept the service, in writing, but kept the papers for some time, and, after returning them, said to Callahan that he would not accept service in writing, but suggested that Callahan get the service made by the coroner. At Millett's request, Callahan took the original and copy from Millett and procured the coroner to make a service at 8:30 that evening. Before the last service was made, the money had been paid over to a Mr. Waugh, agent of the Metcalf Shingle Company. It appears that, at the time of the service by Callahan, the defendant Millett had the sum of $400.20 in his hands, the property of the Metcalf Shingle Company; but, after requesting Callahan to procure the coroner to make service, he drew a check to Waugh and gave it to him, and answered in the case that he did not have the money at 8:30, when the second service was made by the coroner. Judgment was rendered against the plaintiff in the garnishment proceedings, from which judgment the appeal is to this court.

Outside of the question of fact as to whether there was an actual service made or intended to be made by Callahan at 1:30, there are two legal propositions urged by the respondent, to the effect—First, that no service could be made upon Millett, he being a sheriff of the county, excepting by the coroner, and that, therefore, if service was intended to have been made by Callahan, the service would be void; and second, that Millett, having been a receiver of the court and having this money in his possession as such receiver, could not be garnished. From a reading of the statement of facts, we are satisfied that it

was the intention of Callahan to serve this writ of garnishment. From the fact that he requested Millett to accept service of the writ in writing, it cannot be inferred that he did not intend to make service of the writ. He might intend to do this and also be anxious to have the service accepted, for various reasons; and the fact that, out of an abundance of caution, at the suggestion of Millett, he obtained another service by the coroner, does not prove or indicate that he waived the service which he had before made; so that it becomes necessary to determine the question whether or not Callahan was a proper person to make service of the writ. We think, under the statutes as they now exist, that he was. It is true that § 2776 of the Code of 1881 provides that the coroner shall perform the duties of the sheriff in all cases where the sheriff is interested or otherwise incapacitated from serving, but the amendment to the aforesaid section made by the legislature of 1897, on page 21 of the Laws of that year (Bal. Code, § 525 a), after providing as above, has a proviso to the effect that "nothing herein contained shall prevent the court from appointing a suitable person to discharge such duties, as provided by section 745 of the Code of 1881." Section 745 of the Code of 1881 is section 796 of 2 Hill's Code (Bal. Code, § 514), which provides, among other things, that

" When there is no sheriff of a county, or he is disqualified from any cause from discharging any particular duty, it shall be lawful for the officer or person commanding or desiring the discharge of that duty to appoint some suitable person, a citizen of the county, to execute the same; *provided,* that final process shall in no case be executed by any other person than the legally authorized officer; or in case he is disqualified, some suitable person appointed by the court, or judge thereof," etc.

It seems to us that this section plainly warrants the service of this writ by any person, who is otherwise quali-

fied, who may be appointed by the person commanding or desiring the writ. Under the general provisions in relation to the service, writs may be served, when not otherwise specially provided, by any disinterested person. The statutes provide in such cases that proof should be made by the affidavit of the person making service, and the law provides that writs of garnishment shall be served as summonses are served. In addition to these statutes, it is the holding of the courts generally to construe these statutes liberally. In referring to service on corporations, it is said in 22 Am. & Eng. Enc. Law, p. 118, that,

"Since the object of such statutes is merely to carry out the principle that no proceeding may be had against the defendant until due notice has been given him, a service which virtually accomplishes this object will not be held invalid, if the statute is capable of a double construction."

And many cases are cited to sustain this theory, and notably the case of *Pope v. Terre Haute Car Mfg. Co.*, 87 N. Y. 137, where it was said that

"the object of all service of process for the commencement of a suit or other legal proceeding is to give notice to the party proceeded against; and any service which reasonably accomplishes that end, answers the requirements of natural justice and fundamental law."

The same reasoning will apply to service of process on individuals. The second question is more serious, viz., whether or not the receiver in this case could be garnished. It is the general rule that, in the absence of statutory enactment, property which is in *custodia legis* is not subject to attachment or garnishment, and that courts will not allow funds over which they have control, and which are to be applied as future investigations may indicate, to be dissipated or in any manner interfered with. Our statutes, however, provide, in § 5367 of Ballinger's Code

(2 Hill's Code, § 306), that the sheriff or constable may be garnished for money of the defendant in his hands; and § 5368 (2 Hill's Code, § 307) provides for attachment of moneys in court as follows:

" When the property to be attached is a fund in court, the execution of a writ of attachment shall be by leaving with the clerk of the court [a copy] thereof, with notice in writing specifying the fund."

And while there is no statute which has been called to our attention which specifically permits the garnishment of a receiver, or funds in the hands of a receiver, it would seem that no distinction in reason could be made between garnisheeing the officers and funds mentioned in the statute and the funds in the hands of a receiver. But, without passing specifically upon that question, so far as statutory enactments are concerned, the great weight of authority seems to be to the effect that receivers and similar officers will be liable to garnishment where the case in which their appointment has been made has been settled, or where they have a fund in their hands over and above the amount necessary to satisfy the judgment. Thus, the rule is laid down in § 421 of 2 Wade on Attachment, after affirming the doctrine of exemption from garnishment in respect to money or property in legal custody, that

"where there is a surplus after satisfying the judgment, in the hands of the officer, to which the execution defendant will be entitled, it is held, in most of the states where the question has been raised, that this should not be regarded as in the custody of the law, and hence can be reached by garnishment by other creditors while still in the officer's possession,"

citing *Tucker v. Atkinson,* 1 Humph. 300 (34 Am. Dec. 650), and many other cases. In this case it appears that before the receiver had been served with this garnishment, on the 8th day of November, the court had dismissed the

same, at the cost of the lienors, and that the order which had been made upon the receiver was revoked and annulled, and the receiver was authorized to turn over to Waugh all shingles covered by those liens which were in his possession, or moneys, bills of lading, or other securities representing said shingles; so that in this instance it seems to us that the rule which we have just announced above would apply, and that it would in nowise interfere with the jurisdiction of the court, which appointed the receiver, over the moneys in controversy. It has been decided in Maryland that money held by a trustee appointed by a decree of the court of chancery could be attached where the final audit had been certified by the court, and the amount belonging to the debtor ascertained, and an order passed directing the trustee to pay it over. *Williams v. Jones,* 38 Md. 555; *Cockey v. Leister,* 12 Md. 124 (71 Am. Dec. 588). And the 8 Am. & Eng. Enc. Law, p. 1146, after citing *Field v. Jones,* 11 Ga. 413, and other cases wherein the general rule above announced was sustained, says in the foot note:

"The rule would probably be otherwise if the receiver had been garnished after order of court to redeliver the fund or property,"—

and cites, also, *People ex rel. Tremper v. Brooks,* 40 Mich. 333 (29 Am. Rep. 534), and *Willard v. Decatur,* 59 N. H. 137. So, where money is paid into the hands of a clerk by the decree of the court for a specific performance, and the performance of the custodian is accomplished, and his only duty is to pay it over to a certain party, he may be charged as garnishee of that party. *Wilbur v. Flannery,* 60 Vt. 581 (15 Atl. 203). And as far as we have been able to ascertain, in all cases where the fund held by the officer, whether as sheriff or receiver or clerk, was in a condition similar to the funds held by the receiver in this case, it has been held that they were subject to attachment or garnishment.

The judgment will therefore be reversed, and the cause remanded, with instructions to proceed in accordance with this opinion.

Scott, C. J., and Gordon, Anders and Reavis, JJ., concur.