HAINES, P. J.
 

 The record discloses the following state of facts:
 

 On April 9, 1941, plaintiff and respondent, Credit Bureau of San Diego, a California corporation, recovered against
 
 *Supp. 825
 
 one Theodore T. Osborne a judgment in the Municipal Court of the City of San Diego in the amount of $513.03, which is still in force and wholly unsatisfied, and the judgment debtor appears to be insolvent. On April 29, 1943, however, in a criminal action then pending against him, Osborne deposited with the Clerk of the Superior Court of the State of California, in and for the County of San Diego, cash bail amounting to $500. The criminal action was, on May 13, 1943, dismissed and a written order made on May 14, 1943, by the superior court, exonerating said bond. Meantime, the money had been deposited by the clerk with the county treasurer in pursuance of the provisions of section 4292a of the Political Code. There was presented to the superior court an affidavit made on May 13, 1943, by Osborne’s attorney, reciting that the money was due to Osborne, pursuant to which that court, on May 17, 1943, by order directed the appellant Getty, the county auditor, to draw a warrant in Osborne’s favor on the county treasurer for the said $500, and directed the treasurer to pay the same. The warrant was pursuant to said order, and on a requisition from the clerk dated May 18, 1943, accordingly so drawn and the money paid to Osborne on May 19, 1943.
 

 On May 14, 1943, however, the respondent Credit Bureau of San Diego had tendered to one Graves, a supervising account clerk and deputy county auditor, an abstract of said municipal court judgment, issued by the clerk of the municipal court on May 7, 1943, with the affidavit of respondent’s president, dated on that day and captioned in said municipal court case, to the effect that there was then due on the judgment $590.60 and “That there is now due on this judgment (including interest to date, accrued costs and costs of this abstract and the filing thereof and deducting all payments and credits) the total sum of $590.60; That there is money, wages or salary owing and unpaid to Theo T. Osborne a judgment debtor; from the County Clerk (for bail deposited) department of the County Treasurer and the judgment creditor desires to avail himself of the provisions of section 710 C.C.P. and have said money, or enough thereof to satisfy this judgment, paid into the above Court.”
 

 On the advice of a deputy district attorney, the deputy auditor, Graves, refused to accept said abstract of judgment and affidavit. Thereafter and on May 28, 1943, respon
 
 *Supp. 826
 
 dent corporation, Credit Bureau of San Diego, instituted in the municipal court the present action against Getty, both personally and in his capacity as county auditor, and subsequently recovered judgment against him in said action in his personal capacity only, for the said sum of $500, and it is from this judgment that the present appeal is taken.
 

 The first proposition relied on by appellant is: “That money deposited in an official trust fund pursuant to the provisions of Political Code Section 4292a is not money owing and unpaid from the County and therefore Section 710 of the Code of Civil Procedure can have no application.”
 

 It is trué that the procedure authorized by section 710 is applicable, by the terms of that section, only when the judgment sought to be enforced is rendered “against a defendant to whom money is owing and unpaid by this State or by any county, city and county, city or municipality, quasi municipality or public corporation.” The test, then, of its applicability, in any particular case, is whether the state, or the political subdivision of the state involved, owes the judgment debtor money, that is, at the time involved, unpaid. It is, on appellant’s behalf, urged that in contemplation of law if anybody “owed” the $500 to Osborne when the plaintiff presented its abstract of judgment at the auditor’s office, it was the clerk of the superior court, or at all events, not the county, and that there never was money “owing and unpaid” to Osborne by the county, and that, therefore, whatever other procedure may have been open to the plaintiff for reaching the $500, the procedure contemplated by section 710 was not available to accomplish that purpose. It must, we think, be conceded that Osborne was not a creditor of the county in the sense of having any claim upon any of its public funds. As noted in the opening brief for appellant, the Supreme Court, in
 
 Pacific Mutual Life Insurance Co.
 
 v.
 
 County of San Diego,
 
 112 Cal. 314 [41 P. 423, 44 P. 571], in dealing with an action purporting to be brought under section 3819 of the Political Code, as then existing, to recover from a county taxes paid under protest in pursuance of what was claimed to be an illegal assessment for the benefit of a school district, held that the demurrer to the complaint ought to have been sustained, since, though the county treasury was the depositary for the school district’s funds, yet:
 

 
 *Supp. 827
 
 “The funds of the school district are not subject to the control of the county, so as to allow a reimbursement of the county for the amount of the judgment if it should be paid.”
 

 So, also, in
 
 Elberg
 
 v.
 
 County of San Luis Obispo,
 
 112 Cal. 316 [41 P. 475, 44 P. 572], involving an action to recover taxes paid for the benefit of a high school district, under protest, where the action was brought against the county, it was said (p. 318) :
 

 “The county, as such, has no interest in the funds of the high school district, nor any control over the same in the county treasury (Stats. 1893, p. 272); and we do not think it was the legislative intent, by the enactment of section 3819 of the Political Code, to permit an action against a county to recover taxes paid to and held by its officials, not for the benefit of the county nor subject to its disposition, but for the use of, and to be disbursed by, a distinct organization— a local district within the county. If judgment is obtained in such an action against the county, then it must be paid by the county; and no provision is made by which it may have recourse upon the district for the amount thus paid, as it has against the state in the ease of enforced repayment of taxes which have already reached the state treasury (Pol. Code, see. 3819); manifestly this would be unjust to those parts of the county not within the district, and we should not attribute to the legislature a design to allow such a result unless that construction is required by the terms of the statute—as it is not in this instance.”
 

 It will be noted that in each of these cases, although the taxes were actually paid into the county treasury, the law provided that, while there, they should be part of a specific fund belonging to the school district, not the county, and subject to disbursement, not upon the order of the board of supervisors, but only upon warrants drawn under order of the board of trustees of the school district and by its officers. In these circumstances it would seem obvious that the school districts were necessary parties to the litigation and that the action could not properly proceed in their absence, since they only had any real interest in the funds involved, though it was arguable that, nevertheless, the county and the county treasurer might, by reason of the actual presence of the moneys in the county treasury, have also been proper parties, as custodians of the same.
 

 
 *Supp. 828
 

 Union Bank & Trust Co.
 
 v.
 
 Los Angeles County,
 
 2 Cal. App.2d 600, 610 [38 P.2d 442], cited by counsel for appellant, involved a different situation. There money introduced as an exhibit in the trial of a case had disappeared under circumstances indicating an embezzlement by a deputy in the clerk’s office. The owner thereupon sued the county for it. No claim was made that it had ever reached the county treasury. It was held that no action against the county lay for its recovery. The court,
 
 inter alia,
 
 said:
 

 “Herein the money in question was received in evidence as an exhibit under order and direction of the court, and by the court given into the custody of the clerk for safekeeping and subject to further order of the court. The court alone had power to order disposition of the money after the purpose of such legal custody had been accomplished.”
 

 Again:
 

 “And under the allegations it is made clear that the clerk of the court did not receive it as the agent of the county nor in any way for it, or on its behalf. Therefore the county did not become the debtor for this money, nor liable to recovery thereof as of moneys had and received to and for its use and benefit.”
 

 In
 
 Leach
 
 v.
 
 Dinsmore,
 
 22 Cal.App.2dSupp. 735 [65 P.2d 1364], it appeared that Dinsmore, the Clerk of the Municipal Court of the City of Los Angeles, had wrongfully refused to draw his requisition upon the County Auditor of Los Angeles County for refund to the plaintiff’s assignor of $1,500 of certain cash bail deposited by the latter with said court, a forfeiture of which had been set aside by the court within the ninety days allowed by law for that purpose after it had been adjudged, so that the money never, as a matter of law, reached the final status of a “collected forfeiture.” The money had, however, been deposited with the county treasurer and was on deposit with him at the time when the requisition should have been drawn. Afterwards, but prior to the institution of the action, according to the construction placed by the court on what had been done, this money was apportioned to the city of Los Angeles to which it would have belonged had its forfeiture become final. The plaintiff was, in these circumstances, held entitled to proceed as against the clerk, Dinsmore, and the city of Los Angeles as the ultimate recipient of the money, but not as against the county of Los
 
 *Supp. 829
 
 Angeles or its fiscal officers, the court citing
 
 Union Bank & Trust Co.
 
 v.
 
 Los Angeles County, supra,
 
 and saying
 
 inter alia,
 
 that:
 

 “The county was in legal effect hut a governmental agency of the state in this matter and the various county officers were, so far as responsibility is concerned, not agents of the county but merely servants of the law, under the direction of which, rather than of the county, they were required to act, and the county therefore would not be liable for any torts committed by them in that connection, even if they disobeyed the law. ’ ’
 

 No case, indeed, expressly construing the expression “a defendant to whom money is
 
 owing by the State or by any county . . .,”
 
 as used in the particular
 
 enactment
 
 (sec. 710, Code Civ. Proc.) now under consideration, has come to our attention. We recognize, moreover, that there is considerable factual distinction between.'such cases as
 
 Pacific Mutual Life Insurance Co.
 
 v.
 
 County of San Diego, supra, Elberg
 
 v.
 
 County of San Luis Obispo, supra, Union Bank & Trust Co.
 
 v.
 
 Los Angeles County, supra,
 
 and
 
 Leach
 
 v.
 
 Dinsmore, supra,
 
 as well as the various cases cited for appellant to like effect from other jurisdictions, on the one hand and the case at bar on the other. The gist of the opinions in these cited cases is an insistence on the immunity of funds belonging generally to the county or other governmental subdivisions involved from claims of persons having the right to payment only out of special funds of one sort or another, including funds at some time actually in the treasury of the county or other governmental subdivision sued, but really belonging to some other agency such as a school district or a city, in its nature and organization more or less distinct from the nature and organization of the county or other governmental agency sued. In the present case there is no contention that the general funds of the county were ever liable for the plaintiff’s claim and the plaintiff asserts no right to resort to them. For all of that, however, we cannot lose sight of the fact that the applicability or nonapplicability of section 710,
 
 supra,
 
 to the instant case must be determined by the meaning to be given to the particular words “owing and unpaid ... by the county,” and that, therefore, construction in these cases of similar language may not be disregarded.
 

 
 *Supp. 830
 
 It is urged on respondent’s behalf that “after the bail-deposit has been exonerated so that it has ceased to function as bail, an obligation arises upon the part of the County officials to repay the money to the person who deposited it originally; and that said obligation is one for money which ‘is owing and unpaid’ within the intent and meaning of the statute.’’
 

 In support of this interpretation, counsel cite from
 
 Duns-moor v. Furstenfeldt,
 
 88 Cal. 522 [26 P. 518, 22 Am.St.Rep 331, 12 L.R.A. 508], the following:
 

 “Any kind of obligation of one man to pay money to another is a debt. ‘A debt signifies what one owes. There is always some obligation that it shall be paid; but the manner in which ... it is to be paid, or the means of coercing payment do not enter into the definition.’ ”
 

 Counsel call our attention to the following language from
 
 Melvin
 
 v.
 
 State,
 
 121 Cal. 16, 24 [53 P. 416] :
 

 “The term ‘debt,’ however, has a much broader popular significance than the foregoing technical definition, and includes that which is due from one person to another, whether money, goods or services; that which one person is bound to pay to another, or to perform for his benefit; thing owed; obligation; liability.’’
 

 Though all that is thus said be conceded, however, and though it be, for the sake of the argument, admitted that, from the moment that the criminal case was dismissed the deposit in effect ceased to function as bail and the obligation to return the money to Osborne could be properly described as a debt, it still remains to inquire from whom it was “owing and unpaid.’’ Was it owing and unpaid from the county? Or if, from any county officer or official, from whom? It is pointed out in the briefs for appellant that where someone occupying the position of a trustee deposits trust funds with a bank, the bank does not thereby become a debtor to the beneficiary of the trust, but only to the trustee, and it is urged that similarly, when trust funds are for safekeeping deposited in the county treasury the county does not become a debtor to anyone except the officer charged with making and controlling the deposit. It seems to us that there is force in this position. The authority having ultimate power over the funds of the county as such, the board of supervisors, had no function whatever in connection with the moneys
 
 *Supp. 831
 
 here involved. They were subject to a special and distinct form of control. It is true that they could only be removed from the treasury by virtue of warrants to be drawn by the county auditor, but it was not the auditor who was authorized to determine in whose favor such warrants should be drawn. So far as the persons making deposits of cash bail are concerned their dealings are with the court and its clerk and it is to them that the auditor is required to look for direction as to the disbursement of such moneys. In
 
 Dunsmoor
 
 v.
 
 Furstenfeldt, supra,
 
 it was distinctly held that when funds had been deposited in court, the clerk, as soon as the court had determined who was lawfully entitled to them, was subject to an ordinary garnishment at the suit of a creditor of such beneficiary. This was tantamount to deciding that, at that stage of the proceeding, the clerk was the debtor of the beneficiary.
 
 Dunsmoor
 
 v.
 
 Furstenfeldt,
 
 indeed, was decided before the enactment of section 4292a of the Political Code providing for the deposit of trust funds in the county treasury. That the clerk remains accountable, however, for bail money, despite its deposit with the county treasurer, was as has been seen, expressly decided in
 
 Leach
 
 v.
 
 Dins-more, supra,
 
 wherein his liability was held to persist, even after the (wrongful) allocation of the money for the use and benefit of a city. Reciprocally it seems to us logical to hold that, section 4292a being thus ineffectual to relieve the clerk of his obligation to the depositor of the bail, the section is equally ineffectual to give rise to any privity between the county and such depositor and that by that token, inasmuch as the county auditor is a mere agent of the county and not the court, from the fact that nothing is “owing and unpaid” from the county to the depositor of the bail, it necessarily follows that the auditor owes such depositor no duties in connection with the same until some action on his part is invoked, either by the court or its clerk. The effect of this reasoning is not to deprive the one who has deposited bail in court of his remedy in the event he becomes entitled to its return. His right is at .the proper time and after it has served its purpose as bail to claim its return from the clerk, and it follows that the creditors of such depositor may reach it by levying upon it as being to all intents and purposes in the possession of the clerk, though it in fact be placed physically for safekeeping in the county treasury.
 
 *Supp. 832
 
 The situation would, notwithstanding the actual presence of the money in the treasury, appear to be one governed by the authority of such cases as
 
 Dunsmoor
 
 v.
 
 Furstenfeldt, supra; Kimball
 
 v.
 
 Richardson-Kimball Co.,
 
 111 Cal. 386, 387 [43 P.
 
 1111]; Colver
 
 v.
 
 W. B. Scarborough Co.,
 
 73 Cal.App. 455 [238 P. 1110], and
 
 City of Los Angeles
 
 v.
 
 Knapp,
 
 22 Cal. App.2d 211 [70 P.2d 643].
 

 It is in appellant’s behalf further urged that respondent’s attempt, under section 710 of the Code of Civil Procedure, to sequester the money here involved was also ineffectual for the reason that it was, at the time respondent presented at the auditor’s office the affidavit and abstract of judgment,
 
 in custodia legis.
 
 There can, of course, be no question that so long as the money was serving the purpose of cash bail it was
 
 in custodia legis,
 
 and, therefore, incapable of being reached either under section 710, or by any sort of garnishment or levy on the part of the depositor’s creditors. Whether, in theory, it remained
 
 in custodia legis
 
 until the court, on May 17, 1943, in pursuance of section 4292a of the Political Code, made the order directing its repayment to Osborne or ceased to be
 
 in custodia legis instanter
 
 upon the dismissal of the criminal cause on May 13, 1943, or ceased to be
 
 in custodia legis
 
 upon the court’s making the order of May 14, 1943, exonerating the bail, we need not here decide. Neither are we called upon to here decide whether a levy upon it through service of process on the clerk would have been effectual immediately on the dismissal of the criminal case, or not until the court order of May 14, 1943, exonerating the bail had been made, or not until the court order of May 17, 1943, for its repayment to Osborne had been made.
 

 The case, indeed, of
 
 Dunlop
 
 v.
 
 Patterson Fire Insurance Co.,
 
 74 N.Y. 145 [30 Am.Rep. 283], relied on for respondent, goes farther than any California authorities that have come to our attention in sanctioning garnishments affecting funds that have been paid into court. The reasoning there employed admits of such garnishments even though the money (in that instance cash deposited in lieu of an appeal bond) was definitely and still
 
 in custodia legis.
 
 This was permitted on the theory that' what was garnished was not the money but the right of the depositor to the money, which was held to be absolute except for being subject to the rights of the respondent in the appeal. Even if the courts were to adopt that
 
 *Supp. 833
 
 reasoning in this state, however, it would not avail the plaintiff here, because it would only go to his right to garnish the clerk. As to that phase of the matter, the decisions in this state go only so far as to hold that though money be still technically
 
 in custodia legis,
 
 it is subject to a levy after the substantial reason for its continuance in that status has ceased.
 
 (City of Los Angeles
 
 v.
 
 Knapp,
 
 22 Cal.App.2d 211,
 
 supra.
 
 See from other jurisdictions;
 
 Gaither
 
 v.
 
 Ballew,
 
 49 N. C. 488 [69 Am.Dec. 763];
 
 Wilbur
 
 v.
 
 Flannery,
 
 60 Vt. 581 [15 A. 203];
 
 Russell & Co.
 
 v.
 
 Millett,
 
 20 Wash. 212 [55 P. 44].) There are in some jurisdictions authorities which refuse to go even that far
 
 (Dale
 
 v.
 
 Brumbley,
 
 98 Md. 468 [56 A. 807, 64 L.RA. 112];
 
 In re Chakos,
 
 36 F.2d 776;
 
 Bankers Mtg. Co.
 
 v.
 
 McComb,
 
 60 F.2d 218); in which two latter cases the permission of the court to garnish was held necessary. See also
 
 Gottwals
 
 v.
 
 Manske,
 
 60 Nev. 76 [99 P.2d 645, 100 P.2d 580]). Regardless of that proposition, however, this money was certainly subject to levy, as in the hands of the clerk, after the court made its order definitely determining that Osborne was entitled to it on May 17, 1943, two days before it was actually paid to him.
 
 (Dunsmoor
 
 v.
 
 Furstenfeldt, supra, Langdon
 
 v.
 
 Lockett,
 
 6 Ala. 727 [41 Am.Dec. 78],
 
 Wiant
 
 v.
 
 Hays,
 
 38 W.Va. 681 [18 S.E. 807, 23 L.R.A. 82].) Whether the remedy thus afforded to a creditor of a depositor is or is not altogether adequate is a question for the Legislature and not the courts. But, as to the action here attempted, unless the plaintiff has brought itself within the scope of the stautory privilege afforded by section 710 of the Code of Civil Procedure it is not entitled to succeed in the instant case. As is well pointed out in the brief of the amici curiae, prior to the enactment of section 710 of the Code of Civil Procedure, a public agency such as a county was not subject to garnishment
 
 (Ruperich
 
 v.
 
 Baehr,
 
 142 Cal. 190 [75 P. 782];
 
 Lay
 
 v.
 
 Hammond,
 
 212 Cal. 665 [300 P. 10];
 
 Vaughn
 
 v.
 
 Condon,
 
 52 Cal.App. 713 [199 P. 545];
 
 Weiser
 
 v.
 
 Payne,
 
 110 Cal.App. 378 [294 P. 407]) from which it inevitably follows that the remedy afforded by that section, being purely statutory, can have no broader scope than the grant of the statute. This does not mean that the enactment shall not have a liberal construction but it does mean that it can be given no operation not fairly within
 
 *Supp. 834
 
 the ordinary meaning of the terms used in it. In our opinion it would unduly stretch the meaning of this legislation to construe it as applying to funds which the county as such does not owe and never did owe to the judgment debtor. Section 710 provides for no levy by service upon any officer in respect of any other funds than such as are owing and unpaid from the county or other public agency involved.
 

 The views above expressed render it unnecessary to consider the other contentions made in appellant’s behalf.
 

 The judgment is reversed and the cause remanded to the municipal court with instructions to dismiss the action.
 

 Appellant will recover his costs.
 

 Thompson, J., and Kelly, J., concurred.