**SAPER v. LONG et al.**

United States District Court
S. D. New York.
May 7, 1954.

I. Arnold Ross, New York City, for plaintiff.

Shearman, Sterling & Wright, New York City, M. Van Voorhies, William A. Rusher, New York City, of counsel, for defendants.

WEINFELD, District Judge.

The defendants, West and Long, move for summary judgment dismissing this action brought by the plaintiff as trustee in bankruptcy of Riverside Iron and Steel Corporation to recover certain payments made to them by the Clerk of the Superior Court of the State of California. The payments in question were made pursuant to a final judgment entered in an action brought by E. T. Foley, wherein West, Long, one Bradt (a former associate of theirs), Riverside (now bankrupt), and others were parties. The principal ground of the defendants' motion is that the California judgment is conclusive upon the trustee on the issue of the ownership of the funds paid to West and Long and this requires dismissal of all six claims, each of which charges either fraudulent or preferential transfers under provisions

of the Bankruptcy Act.[1] Basic to the trustee's right of recovery, of course, is a finding that the funds in question belonged to, and were, the property of the bankrupt corporation, Riverside. The defendants maintain that the California Court decided that Riverside did not, and never did, have an interest in those funds when it made its awards to West and Long. Accordingly, they contend that the judgment is res judicata and constitutes a collateral estoppel by judgment as against Riverside and the trustee in bankruptcy, as its privy.

■■ The claims asserted in this action to recover the alleged preferential transfers are not the same as those litigated in the California Court. The state action commenced by Foley, assignee of a lease and sale agreement on the so-called "Iron Chief" mine held in the name of Riverside, sought a declaratory judgment to determine the conflicting claims as amongst "Riverside and Bradt" and West and Long to a share of the proceeds resulting from the sale of the lease and sale agreement by Foley under a contract with Riverside and Bradt. Also involved in that state action was a dispute between Foley, on the one hand, and Riverside and Bradt, on the other, as to the validity of Foley's sale. Causes of action under the Bankruptcy Act were not adjudicated. Thus, we deal here not with the doctrine of res judicata but with an aspect of it— collateral estoppel. Collateral estoppel by judgment, as an aspect of res judicata, operates in a suit where the asserted cause of action is different from that upon which the original judgment was granted "only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered."[2] Thus, West and Long must show that Riverside's right to an interest in the proceeds awarded them was distinctly put in issue and that a decision on that issue was necessary to the resolution of the conflict before the California Court.[3] In determining what issues were involved in, essential to, and passed upon in, the prior action, the entire record may be searched "including the pleadings, the evidence submitted, the respective contentions of the parties, and the findings and opinion of the court * * * ."[4]

Our inquiry is to determine whether upon the record submitted on this motion the issue now presented of the right to the funds as between Riverside, on the one hand, and West and Long, on the other, is the same as that litigated and necessarily determined in the original action.[5] Both parties press upon the Court various Findings of Fact and Conclusions of Law, culled from the California record, which seemingly favor their respective positions.

But it is far from clear that the right to the funds as between Riverside, the corporation, and Long and West had been "distinctly put in issue" and was necessary to a resolution of the controversy be-

1. Sections 60, sub. b, 67, sub. d(2) (a), 67, sub. d(2) (d), 70, sub. e of the Bankruptcy Act, 11 U.S.C.A. §§ 96, sub. b, 107, sub. d(2) (a), 107, sub. d(2) (d), 110, sub. e.

2. Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L.Ed. 195; Partmar Corporation v. Paramount Pictures Theatres Corporation, 347 U.S. 89, 91, 74 S.Ct. 414; United States v. Moser, 266 U.S. 236, 241, 45 S.Ct. 66, 69 L.Ed. 262.

3. In Partmar Corporation v. Paramount Pictures Theatres Corporation, supra, 347 U.S. at page 100, 74 S.Ct. at page 421, the Court noted: "Of course, if this finding were not material to the principal action, the doctrine of collateral estoppel would not apply."

4. State of Oklahoma v. Texas, 256 U.S. 70, 88, 41 S.Ct. 420, 423, 65 L.Ed. 831; cf. Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 569, 71 S.Ct. 408, 95 L.Ed. 534.
   While the "Clerk's Transcript" in the California action, which includes the pleadings, Findings of Fact, Conclusions of Law, Judgment and various papers, has been submitted on this motion, the transcript of the minutes of the lengthy trial has not been furnished.

5. United States v. Moser, 266 U.S. 236, 241, 45 S.Ct. 66, 69 L.Ed. 262.

fore the court.[6] What emerges from a fair reading of the record as presented on this motion is that the essential controversy in the California action did not center upon an issue or contention as between Riverside, on the one hand, and Long and West, on the other; but, rather, upon the respective rights of West, Long, and their "colleague" Bradt. The action also concerned the rights of others who were given notice of, or joined in, the action by reason of a claim against the funds. With but one exception, none of Riverside's creditors, numbering more than forty, had notice of, or were made parties to, the action.

The Findings of Fact, Conclusions of Law and Judgment paragraphs which support the defendants' position,[7] must be considered against the entire background of the action, the issues presented and determined, and all the Findings. The reference to the "Bradt and Riverside" interests in the Findings indicates that Riverside was at times regarded as the alter ego of Bradt and at other times as a separate entity. The corporation appears to have been named as a defendant in the main action by Foley by reason of his contract with it and Bradt, and in the cross-action by Long and West as a nominal party. The defendants, even on the present application, state that they did not "understand or consider Riverside to be a separate independent entity, or to be other than a legal instrumentality for holding the naked legal title to the lease and option covering the 'Iron Chief' property and that" after its organization Riverside was wholly and solely owned by Bradt and under his complete dominance and control and his alter ego. * * *" Again, in the moving affidavit it is stated: "At the trial of the California action Bradt's attorney stated in open court that Riverside and Bradt 'are one and the same', and further, 'I don't think that there is a particle of distinction between the individual Bradt and the corporation Riverside Iron and Steel Corporation.'" Bradt, for his part, as President of the corporation, does not appear to have been concerned with the rights and interests of the corporation qua corporation or those of its creditors; rather, he was pressing his individual claim to the proceeds of the funds as against Long and West. That Riverside was cast in the role of a contestant on the merits and that its interests as a corporation and those of its creditors were adequately represented are open questions. This is emphasized by the allowance in the judgment of certain claims of Bradt, West and Long with respect to funds advanced by them in the development of a mine—"The Three Kid" manganese property—which was entirely unrelated to activity of Riverside.

There are further doubts, which again the papers submitted fail to resolve. In their prayer for relief in the cross-complaint in the California action, West and Long asked to be decreed "to be the owners of 333⅓ shares of stock of cross-defendant Riverside and that it be decreed that cross-defendant Foley endorse, transfer, and deliver to the cross-complainants such shares of stock." The 1,000 shares of stock of Riverside had been issued to Bradt and had been endorsed over to Foley to protect him upon the assignment of the lease agreement by Riverside. Finding 59 is to the effect that the written agreement of March 14, 1941, to which Bradt, West, and Long were parties and which lies at the core of the controversy, "contemplated an equal division among Bradt, West and Long of the outstanding shares of Riverside, all of which had been issued to, and now stand in the name of Bradt * * *." All these matters raise the question whether the corporation in fact owned

---

6. Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195; United States v. Moser, 266 U.S. 236, 45 S.Ct. 66, 69 L.Ed. 262; see also Lillis v. Emigrant Ditch Co., 95 Cal. 553, 30 P. 1108.

7. Principally parts of Finding 33, Conclusion 23, and Judgment Par. 8, which use the word "entitled"; and Finding 63, which best supports the position that the court not only found that Riverside did not have an interest in the funds, but *never* had an interest in those funds.

the mine, and the individuals, including the defendants herein, were equitable stockholders of the corporation or merely owned a participating interest in the mine. Long and West now necessarily argue that they each had a ⅓ interest in the mine, not the company, and the California Court so determined.

The fact that distribution of the sums —and not the stock—was ordered in favor of Long and West is not conclusive, at least for purposes of this motion. It is fairly clear that the court did not distribute shares of stock to West and Long only because of the awards of money made to them. Accordingly, the full record may support a claim, tenable from the present papers, that these payments constituted in effect liquidating dividends. Furthermore, the pleadings in the California Court submitted in support of this motion do not indicate that the distinction as between a ⅓ interest in the mine or a ⅓ interest in the corporation was distinctly put in issue there.

Moreover, the language of the Findings and of the Conclusions of the California Court does not seem to have as rigid and as fixed a meaning as defendants argue for.[8] It appears that some of its force is vitiated by the deduction from proceeds otherwise distributable to Long, West, and others, of a sum found due to the sole creditor of Riverside who was cited and appeared in the action.[9] If other creditors of Riverside had like-

wise appeared, would their claims also have been so paid?

In sum, the record leaves it far from clear, at least for purposes of determination of a motion for summary judgment that the issue of the property rights in the proceeds as between the corporation, on the one hand, and Long and West, on the other, was distinctly litigated, decided, and made material to the principal action.

■ Consequently, I hold—and this merely—that the facts here presented do not so clearly establish that Riverside's right to the funds in question had been "distinctly put in issue" in the California action and so clearly determined adversely to it and favorably to the defendants Long and West as to compel the granting of this motion for summary judgment and to estop the trustee in bankruptcy from litigating the issue.[10] Upon a trial the entire record and all contentions may be fully probed and a determination made as to the precise adjudication as between Riverside and Long and West.[11]

The defendants present a further point in their memorandum of law, not specified in the notice of motion, with respect to the first, third and fifth causes of action. Since the trial must be had with respect to the second, fourth and sixth causes of action in any event, and since the further issues raised on the very eve of trial [12] with respect to the other causes of action are not free from doubt and

8. See contra to the Findings relied upon by defendants, the accounting table of Finding 33 and the language and method therein used, and the various uses of the word "entitled" throughout.

9. The amount representing 2½% of the proceeds of the sale, for which "Riverside and Bradt" were indebted to the partners Vinnell and Dunton (Finding 32), was deducted from the proceeds before the shares of West and Long were calculated (Finding 33).

10. Clark v. Mutual Lumber Co., 5 Cir., 206 F.2d 643; Linstroth Wagon Co. v. Ballew, 5 Cir., 149 F. 960, 8 L.R.A.,N.S., 1204; Stark v. Baltimore Soda Fountain Mfg. Co., D.C.Md., 101 F.Supp. 842; Detroit Trust Co. v. Schantz, D.C.Mich.,

14 F.2d 225 and D.C., 16 F.2d 942; Id., D.C., 16 F.2d 943; In re Goetz, D.C. Ariz., 289 F. 118, relied upon by the defendants, in general support the proposition that the trustee in bankruptcy, being in privity with the bankrupt, is also collaterally estopped by a state court judgment determining the ownership of property. But in each case cited prior trial was an adversary proceeding where the property right was definitely put in issue and clearly decided.

11. Cf. Philadelphia W. S. L. & B. Ass'n v. Albert M. Greenfield & Co., D.C.E.D.Pa., 9 F.R.D. 71.

12. Cf. Woods v Robb, 5 Cir., 171 F.2d. 539, 541; 6 Moore's Federal Practice, p. 2044.

have not been adequately briefed by counsel,[13] all claims should be determined upon a full hearing.

The plaintiff's cross-motion under Rule 56(d), Fed.Rules Civ.Proc. 28 U.S.C.A. is also denied.

Settle order on notice.

---

13. The attention of counsel is directed to the following authorities to which they have not referred, but which appear to touch upon the issues raised with respect to the first, third and fifth causes of action: Corn Exchange Nat. Bank v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884; Kimball v. Richardson-Kimball Co., 111 Cal. 386, 43 P. 1111, 1112–1113; Colver v. W. B. Scarborough Co., 73 Cal.App. 455, 238 P. 1110; Dunsmoor v. Furstenfeldt, 88 Cal. 522, 26 P. 518, 12 L.R.A. 508; Credit Bureau of San Diego, Inc. v. Getty, 61 Cal.App.2d Supp. 823, 142 P.2d 105, 108–110; City

of Los Angeles v. Knapp, 22 Cal.App.2d 211, 70 P.2d 643; Vallelunga v. Gomes, 102 Cal.App.2d 374, 227 P.2d 550, 554; Balzano v. Traeger, 93 Cal.App. 640, 270 P. 249; Menges v. Robinson, 132 Cal. App. 647, 23 P.2d 526; Patrick v. Montader, 13 Cal. 434; First Nat. Bank of Los Angeles v. Silva, 200 Cal. 494, 254 P. 262, 263.