[No. 19568.    Department Two.—February 27, 1896.]

# GEORGE H. KIMBALL, APPELLANT, *v.* RICHARDSON-KIMBALL CO., DEFENDANT.    WILLIAM DEERING & CO., INTERVENOR, RESPONDENT.

ATTACHMENT—INTERVENTION—LIEN OF INTERVENORS—GARNISHMENT.—An attachment or execution creditor has a right to intervene in a suit by a prior attaching creditor, and upon a proper showing defeat the lien of the prior attachment; and it is sufficient to justify such intervention that the intervenor has served the attachment by garnishment of certain property and moneys of the defendant in the hands of a bank, upon which the plaintiff has likewise levied his prior attachment, such garnishment being a lien on defendant's title to the property in the hands of the garnishee.

D.—PROPERTY SUBJECT TO ATTACHMENT—CUSTODY OF LAW—INTERPLEADER—SUIT BY GARNISHEE—VOLUNTARY PAYMENT INTO COURT.—When property is lawfully taken by virtue of legal process it is in the custody of the law and not otherwise; and money voluntarily paid into court without an order of court therefor, by a garnishee who has filed a complaint in interpleader against attaching creditors with a view to being discharged from liability to conflicting claimants, is not in the custody of the law, and is the subject of attachment.

ID.—CORPORATIONS—INSOLVENCY—ATTACHMENT BY HOLDER OF UNPAID STOCK—POSTPONEMENT OF LIEN—EQUITABLE RIGHTS OF INTERVENOR.—A creditor of an insolvent corporation, who has obtained a lien by attachment, has an equitable right of intervention in a prior attachment suit brought by an insolvent holder of unpaid stock in the corporation, whose liability to the corporation is largely in excess of his claim against it, in order to prevent the sole assets of the corporation from going to such stockholder, to the exclusion of creditors who have an equitable right to have the entire property and assets, including plaintiff's liability to the corporation, appropriated to the satisfaction of their demands; and the prior attachment lien of such insolvent stockholder is properly postponed to that of the intervenor, and the equitable rights of the parties can as well be adjusted in the proceeding in intervention as by a separate direct action for that purpose.

ID.—EX PARTE ORDER OF INTERVENTION.—The court may properly allow an intervention by an *ex parte* order.

ID.—COMPLAINT IN INTERVENTION—DEMURRER—PRESUMPTION UPON APPEAL.—Where the whole complaint in intervention is not set out in the record, it will be presumed upon appeal that a demurrer thereto was properly overruled.

ID.—DEFECTIVE COMPLAINT—WAIVER OF OBJECTION.—Where a complaint does not entirely omit to plead a material fact, but such fact is defectively stated, objection to the defective statement is waived by going to trial thereon without demurrer, and allowing evidence to be introduced thereunder without objection in the court below, and the appellant cannot successfully urge an objection thereto on appeal for the first time.

APPEAL from a judgment of the Superior Court of Los Angeles County.  J. W. McKINLEY, Judge.

The facts are stated in the opinion of the court.

*Clarence A. Miller*, for Appellant.

The garnishment of the intervenor was no part of the matter in litigation, and he should not have been allowed to intervene.  (Code Civ. Proc., sec. 387; Civ. Code, sec. 2888; *Horn* v. *Volcano Water Co.*, 13 Cal. 64, 69, 70; *Gasquet* v. *Johnson*, 1 La. 425; Pomeroy's Remedies, secs. 424, 429; *Porter* v. *Garrissino*, 51 Cal. 561.)  The right to intervene is purely statutory.  (*Chase* v. *Evoy*, 58 Cal. 354.)  No specific lien is created by garnishment. (Wade on Attachment, secs. 325, 334, 338.)  Money paid into court cannot be attached.  (Anderson's Law Diction. ary, tit. " Custody of the Law"; Drake on Attachments, sec. 509; 2 Wade on Attachments, secs. 337, 420; Code Civ. Proc., sec. 544.)  An averment of indebtedness or nonindebtedness is a conclusion of law.  (*Quinn* v. *Smith*, 94 Cal. 165; *Lightner* v. *Menzel*, 35 Cal. 452, 460; *Wells* v. *McPike*, 21 Cal. 215, 219.)  The debt for unpaid stock subscription does not accrue until a call is made. (Cook on Stocks and Stockholders, sec. 105, note 1, 2, sec. 201; Morawetz on Corporations, secs. 819–21; Spelling on Corporations, sec. 781; Civ. Code, secs. 331–39, 349.)  There is no reason why a stockholder of a corporation cannot obtain preference by prior attachment as well as any one who is not a stockholder.  (*Whitwell* v. *Warner*, 20 Vt. 444.)  The creditors of the corporation can only reach the liability of the stockholders by direct action in equity to enforce a call, making all the stockholders of the corporation and the corporation itself parties, and such action is considered equivalent to a call when the bill is filed.  (Thompson on Stockholders, secs. 12, 15, 16, 259, 353, 361; *Hatch* v. *Dana*, 101 U. S. 205; *Harris* v. *First Parish*, 23 Pick. 112; Cook on Stocks and Stockholders, secs. 204, 206.)  The suit can only be maintained after exhausting the remedy at law.  (*Marsh* v.

*Burroughs,* 1 Woods, 463; Thompson on Stockholders, sec. 265, p. 337; Cook on Stocks and Stockholders, sec. 200.) *Nulla bona* return is a condition precedent to such suit. (*Bank of United States* v. *Dallam,* 4 Dana, 575.) The suit must be on behalf of all the creditors of the corporation. (Morawetz on Corporations, sec. 866; Thompson on Stockholders, sec. 351; Cook on Stocks and Stockholders, sec. 205.)

*Carver & Preston,* for Respondent.

Objection to the right of intervention cannot be raised for the first time in this court. (*People* v. *Reis,* 76 Cal. 269.) Subsequent attaching creditors have a right to intervene in a prior attachment suit for the purpose of having the prior attachment made subject to the claim or lien of the intervenor. (*Horn* v. *Volcano Water Co.,* 13 Cal. 62; *Davis* v. *Eppinger,* 18 Cal. 378; 79 Am. Dec. 184; *Speyer* v. *Ihmels,* 21 Cal. 280; 81 Am. Dec. 157; *Coghill* v. *Marks,* 29 Cal. 673.) When an incorporation is insolvent, no call is necessary to enable a creditor in equity to compel payment of unpaid subscriptions to stock. (Cook on Stocks and Stockholders, 108.) Courts of equity have held the subscription to be due as between the stockholder and the creditors of the corporation regardless of a call; and this, notwithstanding a statutory liability to assessment. (*Harmon* v. *Page,* 62 Cal. 448; *Hatch* v. *Dana,* 101 U. S. 205; Morawetz on Corporations, secs. 819–21; Thompson on Stockholders, secs. 10–15, 105; Spelling on Private Corporations, secs. 781, 786.) A creditor of an insolvent corporation, who is also a stockholder therein, and whose subscription to the stock remains unpaid, will not in equity be allowed to gain any preference over other creditors who are not stockholders. (Spelling on Corporations, secs. 818, 819; *Weber* v. *Fickey,* 47 Md. 196; *Emmert* v. *Smith,* 40 Md. 123; *Thompson* v. *Meisser,* 108 Ill. 359; *Potter* v. *Stephens Machine Co.,* 127 Mass. 592; 34 Am. Rep. 428; *Thayer* v. *Union Tool Co.,* 4 Gray, 75; *Scammon* v. *Kimball,* 92 U. S. 366; *Thompson* v. *Reno*

*Sav. Bank*, 7 Pac. Rep. 68.)   A single creditor of an in-
solvent corporation may maintain his action directly
against any one or more of the subscribers, and may
obtain full satisfaction of his claims, and it is not the
duty of the plaintiff creditor to adjust equities or com-
pel contributions between the other shareholders and
defendant, or between the other creditors and himself.
(See authorities cited above; also Morawetz on Corpora-
tions, 864–66; *Harmon* v. *Page, supra; Marsh* v. *Bur-
roughs*, 1 Wood, 463; *Ogilvie* v. *Knox Ins. Co.*, 22 How.
380; *Wheeler* v. *Miller*, 90 N. Y. 354; *Clapp* v. *Peterson*,
104 Ill. 26.)

SEARLS, C.—The action was brought by the plaintiff
upon a promissory note to recover from defendant
$1,500 and interest.

Plaintiff issued an attachment which was levied upon
certain property and moneys of defendant in the hands
of the Los Angeles National Bank.   Defendant made
default, and no question was made as to plaintiff's right
to a judgment against defendant.

William Deering & Co. (a corporation) also brought
an action against the same defendant (a corporation) to
recover money due it from said defendant; issued a writ
of attachment, which was subsequently levied upon the
same property and money previously levied upon by
plaintiff.

William Deering & Co. took judgment against defend-
ant for $1,372.69.   After levying its attachment William
Deering & Co. intervened in this action, and set up facts
claiming to show the lien of plaintiff's attachment
should be postponed and held subordinate to the lien of
its subsequent attachment.   The cause was tried by the
court, written findings filed, and judgment rendered,
adjudging the lien of intervenor's attachment superior
to that of the attachment lien of plaintiff, and adjudging
the former to be first paid out of the attached property.

Plaintiff appeals from the judgment and the cause
comes up without a bill of exceptions or statement,

upon so much of the judgment-roll as by the stipula-
tion of the parties is deemed sufficient to illustrate the
questions in dispute.

The points made by appellant in favor of reversal are:
1. That the findings do not support the decree; 2. That
finding XI is not supported by the pleadings.

It would be more satisfactory to set out the findings
in full, but their great length precludes our doing so.
The following is believed to be a fair synopsis of them,
and to lead to an understanding of the questions in-
volved:

1. That "William Deering & Co." is, and for more
than five years past has been, a corporation organized
under the laws of Illinois.

2. The " Richardson-Kimball Company" is, and since
1887 has been, a corporation under the laws of California.

3. The plaintiff, George H. Kimball, is and has been
secretary, treasurer, and a stockholder of said Richard-
son-Kimball Company since 1887.

4. Intervenor William Deering & Co. has been since
1888 a creditor of the Richardson-Kimball Company
(hereinafter called defendant), and on the sixth day of
September, 1888, defendant had certain moneys of Will-
iam Deering Company (hereinafter called intervenor)
which it held for intervenor's use, viz., $2,507.43, which
it acknowledged in writing, but which it failed to turn
over to intervenor, and there is due intervenor on ac-
count thereof $1,416.74.

5. That since 1889 defendant has been and still is in-
solvent, which was well known to plaintiff and defend-
ant.

6. The attached property, money, etc., was on the 9th
of May, 1891, in the hands of the Los Angeles National
Bank, subject to its certain liens thereon, which was
known to plaintiff and defendant.

7. On said May 9th defendant made the note in suit
to plaintiff, which was not made to defraud intervenor
or other creditors, but was for a consideration of $1,500,
and was made without fraud or collusion.

8. On the 18th of August, 1891, plaintiff brought this action, and attached all the property and money of defendant in the hands of said bank.

9. On the fifth day of September, 1891, intervenor brought suit against the defendant, and attached the same property.

10. The property so attached by plaintiff and intervenor was, and now is, the only property and assets of the defendant.

11. Upon the incorporation of defendant in 1887, plaintiff subscribed $22,400 to its capital stock, upon which he has not paid more than $2,400, and he still owes on account thereof $20,000. No calls or assessments have ever been made by defendant on account of the sum due and owing by plaintiff on account of his subscription to the capital stock; since May 1, 1891, plaintiff has been at all times insolvent.

12. After intervenor filed its complaint of intervention herein, viz., on the third day of November, 1891, the attachment in its suit against defendant was discharged by order of the court, and thereafter, and on the seventh day of November, 1891, intervenor sued out a second writ of attachment in the same cause, which on the ninth and eleventh days of November, 1891, was served upon the said Los Angeles National Bank, in the usual form, with notice, etc., attaching all the property, money, etc., of defendant in its hands.

This attachment was also served in like manner upon T. H. Ward, as bailee of said bank, and the sheriff has since that time held the money and property so by him attached.

Intervenor obtained judgment in its action against defendant on the sixteenth day of January, 1892, for $1,372.69, and the property and money is held by the sheriff for the satisfaction thereof.

On the twenty-first day of September, 1891, the Los Angeles National Bank commenced an action against F. A. Carter and others, including all the parties to this action, in a complaint of interpleader, requiring them

to litigate their claims, etc., and at the same time deposited with T. H. Ward, the clerk of the superior court, all the property and money of defendant in its hands, subject to the determination of the action of interpleader.

Such deposit was made without order of the court and without the knowledge or consent of defendant or intervenor herein, and such action of interpleader is still pending and undetermined.

On the 16th of January, 1892, intervenor filed a supplemental complaint in intervention, setting out the order dissolving its attachment and the issuing and service of the writ of attachment of November 7, 1891, etc. This last fact is admitted in the record.

It also appears that plaintiff interposed a general demurrer to intervenor's complaint in intervention, which was overruled by the court.

The theory of appellant is that the findings do not support the decree for the reasons:

(a) That intervenor, as an attachment creditor in another suit against defendant, has no such "interest in the matter in litigation" as entitles him, under section 387 of the Code of Civil Procedure, to intervene.

In support of this first contention he cites *Horn* v. *Volcano Water Co.*, 13 Cal. 62. The intervenors in that case were general creditors of the defendant, without any lien, either general or specific, on the property involved in the action. In speaking to this point the court said: "To authorize an intervention, therefore, the interest must be that created by a claim to the demand, or some part thereof, in suit, or a claim to or lien upon the property, or some part thereof, which is the subject of litigation. No such claim or lien is asserted in the petition of Rawle, and his right to intervene must in consequence fail."

The court further held that certain other parties who were judgment creditors were proper parties. That case clearly intimates that a creditor having a lien upon the

property there sought to be foreclosed under mortgages was entitled to intervene.

That, under our code, an attachment or execution creditor has a right to intervene and upon a proper showing defeat the lien of a prior attaching creditor, we regard as too well settled to need further discussion. (*Davis* v. *Eppinger*, 18 Cal. 378; 79 Am. Dec. 184; *Speyer* v. *Ihmels*, 21 Cal. 280; 81 Am. Dec. 157; *Coghill* v. *Marks*, 29 Cal. 673; *Coffey* v. *Greenfield*, 55 Cal. 382.)

(*b*) It is further contended that, if a lien by direct attachment were sufficient to give intervenor a standing in court, he claimed no such lien, but only to have a garnishment, which creates no lien on the property.

Garnishment under our law is but another name for the service of a writ of attachment upon personal property in the possession of persons other than the defendant in the writ, and also to secure debts, credits, etc., in the hands of such third persons.

By the service in the manner provided by statute, whether it be termed garnishment or service of the attachment, while the possession is not necessarily disturbed, " a lien is obtained on defendant's title to the property in the hands of the garnishee." (Wade on Attachments, sec. 338.)

(*c*) It is further urged that intervenor had no lien for the reason that his attachment was dissolved, and before the second writ of attachment issued the bank had commenced a suit in interpleader and had deposited the money and property with T. H. Ward, clerk of the superior court, and that the money being in the custody of the law was not subject to attachment.

The first clause of section 386 of the Code of Civil Procedure provides that a defendant against whom an action is pending, upon a contract or for specific personal property, may at any time before answer, upon making the showing therein provided for and upon notice to the parties, apply to the court for an order, substituting the third party who makes claim to the property as a defendant in his place, and he may be

discharged from liability to either party, " on his depositing in court the amount claimed on the contract, or delivering the property or its value to such person as the court may direct; and the court may, in its discretion, make the order."

The Los Angeles National Bank was not the defendant in any pending action, and hence was not within the purview of the first clause of section 386 of the Code of Civil Procedure, but instituted on its own account an action to compel the parties to interplead under the latter clause of the same section, with a view to being discharged from liability to any or all of the conflicting claimants.

This clause makes no provision for an order permitting the plaintiff in the action of interpleader to pay into court or deliver the property claimed.

We may suppose the court possesses the power to make the order permitting a party in a proper case to do so, but in the present case no such order was made or asked for, and until it was obtained the bank could not, on its own volition, relieve itself from responsibility, by voluntarily placing the property and money in the hands of the clerk, and when so placed it was in no proper sense in the custody of the law.

When property is lawfully taken, by virtue of legal process, it is in the custody of the law, and not otherwise. (*Gilman* v. *Williams*, 7 Wis. 334; 76 Am. Dec. 219.)

Money deposited by a defendant with the sheriff for the release of an attachment is in the custody of the law. (*Hathaway* v. *Brady*, 26 Cal. 581.) But this is because it is a symbol of and stands in place of the attached property. Other cases might be mentioned of like import. It is sufficient to say that the property in question was not in the custody of the law, and whether in the hands of the bank or of Ward it was subject to attachment. We are of opinion, therefore, that intervenor acquired a valid lien by his second attachment.

(*d*) The only remaining question relates to the suf-

ficiency of the finding to warrant the postponement of plaintiff's lien to that of intervenor.

The proceeding on the part of intervenor is an equitable one to prevent the sole assets of the corporation, which is insolvent, from going to the plaintiff, who is also insolvent, who is a large owner of stock in the corporation, and whose liabilities to the corporation are in excess of $20,000. It may be true plaintiff is not in a legal sense indebted to the corporation for the reason that no assessment has been levied or call made on account of his subscription.

It is nevertheless a liability which a court of equity, for the purpose of meeting the obligations of the corporation, could enforce, either by the direct levy of an assessment, or by requiring the directors of the corporation to do so. This course would be of no avail as against the insolvent plaintiff. It would be in the highest sense inequitable to permit one thus situated to avoid his liability by reason of his insolvency, and at the same time swallow up the entire assets of the concern to the exclusion of creditors who have an equitable right to have the entire property and assets of the company appropriated to the satisfaction of their demands. Plaintiff's liability is an asset, which but for his insolvency would go to swell the property of the corporation *pro tanto*.

His share or interest in the corporation is his proportion, measured by his stock in the residuum after the payment of all demands due and owing by the company. " After actual insolvency, however, unpaid capital becomes a trust fund, to reach which creditors are not required first to reduce their claims to judgment." (Spelling on Corporations, sec. 821, and cases there cited.)

Some of the cases go to the extent of holding that a stockholder of an insolvent corporation cannot offset an individual claim against the corporation in proceedings to enforce his liability for unpaid subscription for stock, but that he must pay in full and receive his *pro rata*

share with other creditors on his demand. (Spelling on Corporations, sec. 818.)

However this may be in a proceeding to wind up the affairs of a corporation, we are of opinion that in an action like the present, where both the corporation and the stockholder are insolvent, and the latter is liable upon his subscription for stock of the company in an amount greatly in excess of all the claims in question, he cannot upon any equitable principle be permitted to enforce an individual claim against the corporation to the exclusion of other creditors, and that his prior attachment lien should be postponed to that of subsequent attaching creditors where necessary to their payment, and in cases where without such postponement they must inevitably lose their demands, and the entire assets of the corpotion go to satisfy the individual debt of the stockholder thus insolvent and thus liable on account of his subscription. (*Hatch* v. *Dana*, 101 U. S. 205; *Harmon* v. *Page*, 62 Cal. 448.)

The fact that this is a proceeding of intervention is no reason why the equitable rights of the parties should not be adjusted on the same principle as the court would do in a direct action for that purpose, and the fact that intervenor might have brought an action and obtained relief therein is no argument against his right here. (*Coffey* v. *Greenfield, supra.*)

The order of the court *ex parte* allowing an intervention was proper. (*Spanagel* v. *Reay*, 47 Cal. 608.) As the complaint in intervention is not set out in the record, we must presume the demurrer thereto was properly overruled.

The only other objection necessary to be noticed is that finding XI is not supported by the pleadings. So much of the complaint in intervention as related directly to finding XI is set out in the record, and is to the effect that defendant was not indebted to plaintiff in any amount, but that, on the contrary, plaintiff is, and since May, 1891, has been at all times, indebted to defendant in the sum of more than two thousand five hundred

dollars, and that he, the said plaintiff, has been at all times since May 1, 1891, and now is, insolvent.

These allegations are contained in an amendment to intervenor's complaint. No objection was made thereto by way of demurrer or to the introduction of evidence thereunder in the court below.

We cannot see how appellant can successfully urge his objection here for the first time.

There was an attempt to plead the substance of the finding, and plaintiff having gone to trial thereon, and evidence having been introduced without objection in support of the finding, it is too late to object here. (*Tynan* v. *Walker*, 35 Cal. 645; 94 Am. Dec. 152; *Cave* v. *Crafts*, 53 Cal. 141; *Crowley* v. *City R. R. Co.*, 60 Cal. 630.) It is a case of defective pleading which may be waived, and not an entire omission to plead a material fact which is fatal. (*Richards* v. *Travelers' Ins. Co*, 80 Cal. 505; *Wilson* v. *White*, 84 Cal. 239; *Greiss* v. *State Inv. etc. Co.*, 98 Cal. 241; *San Francisco* v. *Pennie*, 93 Cal. 465; *Lee* v. *Figg*, 37 Cal. 328; 99 Am. Dec. 271.)

Upon the whole record as presented we are of opinion the judgment appealed from should be affirmed, and so recommend.

BELCHER, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

McFARLAND, J., TEMPLE, J., HENSHAW, J.