[Civ. No. 26049. Second Dist., Div. Two. Sept. 7, 1962.]

FRANK PHILLIPS et al., Plaintiffs, Cross-defendants and Respondents, v. THOMAS F. BARTON, JR., Defendant, Cross-complainant and Respondent; J. K. McELDOWNEY, Defendant, Cross-complainant and Appellant.

Hy Schwartz for Defendant, Cross-complainant and Appellant.

Eugene C. Berchin for Plaintiffs, Cross-defendants and Respondents.

No appearance for Defendant, Cross-defendant and Respondent.

ASHBURN, J.—Basically, plaintiffs' complaint is an action to recover earnest money following the failure to consummate an agreement to purchase a restaurant. Plaintiffs Phillips recovered judgment against J. K. McEldowney, the defendant seller, and defendant Thomas F. Barton, Jr., the broker; defendant McEldowney appeals.

On October 26, 1959, plaintiffs Frank and Lydia Phillips had extended discussions with defendant J. K. McEldowney for the purchase of the latter's restaurant business known as The Three Palms. Following the discussions, plaintiffs and defendant McEldowney executed a "Deposit Receipt & Offer to Purchase." It specified a price of $50,000, payable as follows: $14,000 "upon the completion of stock transfer," which sum included a $5,000 deposit, receipt of which was acknowledged; balance to be paid at the rate of $500 or more per month beginning January 1, 1960. The document also said: "BUYER submits this offer, subject to the following terms and conditions: 1. Subject to the approval of the lease by the buyers; 2. Subject to seller executing an agreement stating that buyers will be held harmless by the seller from any and all claims, bills, liens, and charges arising out of the operation of the business prior to the date of possession of the buyers." It also provides for payment by the seller of a $5,000 commission to defendant Thomas F. Barton, Jr., the broker. The lease mentioned therein was to be one covering the real property upon which the restaurant stood. The trial court found that the plaintiffs engaged an attorney by the name of Leo Mack, Jr., to review the proposed lease submitted by the defendant and that the plaintiffs disapproved of the lease after being advised to do so by their attorney.

Attorney Mack testified that on the evening of October 27,

1959, he received a call from a person who identified himself as Mr. Smith, attorney for appellant McEldowney. Mack expressed a number of objections to the lease in that conversation. Mack also stated that he had not had a full opportunity to examine the lease but was merely making the objections that occurred to him at that time. The following day, Mack received a letter from Smith purporting to meet Mack's objections. Mack testified that he called Smith and told him that the proposed changes did not meet all of his objections. There was additional correspondence until November 11, 1959, when Mack withdrew from the matter. He further testified that on October 30, 1959, he spoke to his clients and advised them that the lease, even with the proposed changes, was completely unsatisfactory. Following November 11, 1959, plaintiffs retained Eugene C. Berchin as their attorney and he also rejected the lease.

The court's findings contain the following: "The court finds that subsequent to the execution of the deposit receipt and offer to purchase, the plaintiffs did receive a copy of a proposed lease, and that the plaintiffs at no time approved said lease and were dissatisfied with the provisions of said lease, and said lease was in fact not approved. The court further finds that the disapproval of the plaintiffs as to the lease was not arbitrary or capricious." "The court specifically finds that the terms and conditions of the lease were not agreed upon and specifically the term, rent, provisions for changing the use of the building, parking facilities, the right of the lessor to improve by expanding and or completely reconstructing the building, and the minimum rental to be paid in the event of a reconstruction or expansion were never agreed upon. The Court further finds that the parties did not agree as to the payment of increased taxes by the lessee or restrictions on the right of assignment or the provisions relating to a destruction of the premises. The court further finds that the parties at no time agreed to the hours of operation or the number of days a year the premises were to be open to the general public." "The court finds that the cross defendants [Phillips] did not fail or improperly refuse to carry forward and consummate the contract in that there was no meeting of the minds on the lease, indemnity agreement and neither of said documents were ever approved. That since the parties had no meeting of the minds, the contracts involved could not and were not consummated, and as a result thereof, the cross complainant [McEldowney] suffered no

damage." "That there has been a total and complete failure of consideration in that by the terms of the Deposit Receipt and Offer to Purchase, the entire transaction was subject to the approval of the lease. That the plaintiffs in good faith did reject the lease. That the lease was a material matter in the transaction, and the refusal of the plaintiffs to accept the lease nullified any right on the part of the defendant J. K. McEldowney to make claim to the sum of $5,000.00."

Appellant's briefs consist mainly of arguments concerning conflicting evidence and an implied invitation to this court to review its weight. This we do not do. If it be deemed an attack upon the sufficiency of the evidence to support the findings the briefs are manifestly deficient. ■■■ Pertinent here is the language of our opinion in *Davis* v. *Lucas,* 180 Cal.App.2d 407, 409 [4 Cal.Rptr. 479] : "The appellate court starts with the presumption that the evidence sustains each finding of fact [citations], and the burden rests upon appellant 'to demonstrate that there is no substantial evidence to support the challenged findings.' [Citations.] ■■■ To this end appellant must set forth in his brief all material evidence upon this point, not merely his own proofs [citations] ; if this is not done the point is deemed waived (so held in the cases just cited). Counsel in this case has made no real effort to comply with the rule. '[A] claim of insufficiency of the evidence to justify findings, consisting of mere assertion without a fair statement of the evidence, is entitled to no consideration, when it is apparent, as it is here, that a substantial amount of evidence was received on behalf of the respondents.' [Citation.] In the circumstances we are entitled to accept the statements of respondent's brief as to the evidence upon the subject. Respondent's counsel has assembled enough of the testimony in his brief to show at least a substantial conflict in the evidence. Our duty begins and ends with the determination of the existence of such a conflict."

Appellant also attacks the findings. This is done by reference to the objections to the findings of fact and conclusions of law contained in the clerk's transcript. Counsel also quotes objections. They merely argue the evidence and suggest alternative findings. This of course is insufficient. In truth the findings are complete, consistent and sufficient, drawn in the spirit of section 632, Code of Civil Procedure, which says: ". . . The statement of facts found shall fairly disclose the court's determination of all issues of fact in the case. . . ."

The portion of the judgment in favor of plaintiffs against defendants McEldowney and Barton must be affirmed.[1]

However, the portion of the judgment in favor of Barton against McEldowney and plaintiffs Phillips "for the sum of $200.00 for the reasonable value of the services rendered by THOMAS F. BARTON, JR., and for the further sum of $350.00 for the defense of this action" must be reversed.

The deposit receipt contained the agreement of the seller to pay Barton a commission: "THE ABOVE OFFER is hereby accepted by the SELLER(s), and the THOMAS F. BARTON & Co., is hereby instructed to open an escrow, with the provision that SELLERS will pay a commission to THOMAS F. BARTON, of $5,000.00, and SELLERS hereby ratify payment of this commission." Barton's "Cross-Complaint for Damages" alleges that he brought the parties together upon an agreement for purchase of the restaurant by plaintiffs and that pursuant thereto the deposit receipt was executed. It is also alleged: "That Cross-Complainant did all things necessary and proper to bring the parties together and expended in excess of twenty (20) hours on the negotiations, and that the reasonable value of his time is Twenty ($20.00) Dollars per hour; to cross-complainant's damage in the sum of Four Hundred ($400.00) Dollars. That Cross-Complainant had a reasonable expectancy in the event Buyers and Sellers executed their agreement, of obtaining a commission of $5,000.00; to cross-complainant's further damage in said amount." The prayer is for $400 "for loss of time in bringing the parties together and in negotiating," for $5,000 commission and for $350 attorney's fees.

There is no room for doubt that Barton was the procuring cause of the execution of the deposit receipt, which sets forth an offer to buy upon specified terms, but upon conditions as follows: "BUYER submits this offer, subject to the following terms and conditions: 1. Subject to the approval of the lease by the buyers. . . ." The seller's acceptance of "the above offer" contains an instruction to open an escrow, etc.

---

[1] It also contains the following provision: "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that THOMAS F. BARTON, JR., deliver forthwith to the plaintiffs, the sum of $5,000.00 in the possession of THOMAS F. BARTON, JR., and upon so doing, the plaintiffs are ordered to file a Satisfaction of Judgment against said defendant, THOMAS F. BARTON, JR., and a Partial Satisfaction of Judgment against the defendant, J. K. MCELDOWNEY."

The broker cannot recover a commission under this agreement for the condition was never performed, and it is the law that "acceptance of a conditional deal procured and presented by the broker does not ripen into a right to a commission unless that condition, precedent or subsequent is performed. See *Colton* v. *O'Brien,* 217 Cal. 551, 553 [20 P.2d 43]; *McAdoo* v. *Moore,* 70 Cal.App. 408, 410-411 [233 P. 391]; *Leipsic* v. *Taggart,* 101 Cal.App. 726, 728 [282 P. 400]; *Lawrence Block Co.* v. *Palston, supra,* 123 Cal.App.2d 300, 309 [266 P.2d 856]; *McFarland* v. *Heady,* 123 Cal.App.2d Supp. 973, 976 [267 P.2d 460]; *Cochran* v. *Ellsworth,* 126 Cal.App.2d 429, 439 [272 P.2d 904]." (*Wesley N. Taylor Co.* v. *Russell,* 194 Cal. App.2d 816, 828 [15 Cal.Rptr. 357].)

Subject to certain exceptions not here applicable the broker must recover upon and according to the terms of his written contract. When that reflects a conditional deal between the buyer and seller, no right to compensation accrues to him unless or until the condition has been performed. *McFarland* v. *Heady,* 123 Cal.App.2d Supp. 973, 976 [267 P.2d 460]: "The situation is simply one in which the principals agreed to effect an exchange of property, only if a lease, with certain terms, should be granted by the owner of the land on which the motel was located; the procurement of the lease proved impossible and, as the condition was not complied with, no effective contract for the exchange of the property ever came into being. The plaintiff undoubtedly devoted substantial time and money in his attempt to complete the transaction, and he did all that he could to close the deal successfully, But, as the contract for the exchange was conditional and the condition did not occur, the broker is not entitled to any pay."

▮▮▮ *Cochran* v. *Ellsworth,* 126 Cal.App.2d 429, 440 [272 P.2d 904]: "Where a broker has seen fit to allow payment of his compensation to be contingent upon performance of a contract between parties other than himself, he cannot complain if, through the non-performance of that contract, his own contingent rights be lost. If the broker suffers any hardship from that result, it is unfortunately inherent in the form of his contract, which was the only written means he chose for his protection. (*Lawrence Block Co.* v. *Palston,* 123 Cal.App. 2d 300, 307 [266 P.2d 856].)"

▮▮▮ The Supreme Court has plainly held that a broker who cannot recover on his written contract likewise cannot recover in *quantum meruit.*

*Britschgi* v. *McCall,* 41 Cal.2d 138 [257 P.2d 977]. Three

actions were consolidated on appeal—specific performance by vendee against vendors, breach of contract by one broker against the vendors for failure to consummate the deal, and for reasonable value of services by another broker against the vendors. Because of an unperformed condition precedent which had been inserted in the contract for the benefit of the seller they were held not obligated to perform. With respect to the brokers the court said, at page 145: ''The actions in which the real estate brokers seek to recover cannot be successfully maintained in view of the holding that the defendants are under no obligation to consummate the sale.''

The award to cross-complainant Barton of $200 is not sustainable. The court correctly concluded that he ''is not entitled to a commission.'' The cases cited and quoted above show that the theory of awarding the broker $200 as expressed in the findings is erroneous: ''The Court finds that Thomas F. Barton, Jr. did expend time and service to bring the cross defendants together and did expend services of the reasonable value of $200.00; . . . That much of the time expended was as a result of the dispute between the parties in an attempt to bring about harmony and peace during which time said cross complainant acted as a stakeholder.''

The allowance of a $350 attorney fee payable to Barton is likewise erroneous. Such a right arises only from contract or statute. (*Reid* v. *Valley Restaurants, Inc.*, 48 Cal.2d 606, 610 [311 P.2d 473]; *Viner* v. *Untrecht*, 26 Cal.2d 261, 272 [158 P.2d 3].) Neither basis is present here. The suggestion that section 386.6, Code of Civil Procedure, may authorize the instant allowance cannot prevail. Neither Barton's answer nor his cross-complaint amounted to an interpleader. The answer did aver that he had no interest in the $5,000 and that he was a mere stakeholder, but it went no further and took none of the steps prescribed by the interpleader statute, sections 386 and 386.5. His cross-complaint, directed at plaintiffs Phillips and defendant McEldowney, prayed *inter alia* for the recovery of $5,000 as his commission thus showing that he was not a disinterested party who could interplead (28 Cal.Jur.2d § 8, p. 451); this is true notwithstanding his averment that he has no interest in the controversy and is merely a stakeholder of the $5,000 on deposit.

He did not pay the money into court or seek a discharge from liability as required by sections 386 and 386.5, Code of Civil Procedure. The only right to recover attorney fees in an interpleader is statutory and conditioned by sec-

tion 386.6 upon following "the procedure set forth in Section 386 or 386.5." Not having done that, Barton had no statutory basis for recovery of an attorney fee and hence his situation fell within section 1021, Code of Civil Procedure: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ." The award of attorney fees herein is erroneous.

The judgment for $200 for services and $350 attorney fee runs against plaintiffs and cross-defendants Phillips, as well as defendant and cross-defendant McEldowney. However, plaintiffs did not appeal therefrom.

That portion of the judgment in favor of plaintiffs Phillips and against defendants McEldowney and Barton for recovery of $5,000 and providing that McEldowney alone pay interest thereon is affirmed. All other portions of the judgment are affirmed except that portion which provides that defendant and cross-complainant Barton recover from defendant and cross-defendant McEldowney the sum of $200 for the reasonable value of services rendered and the further sum of $350 as attorney fee "for the defense of this action," which last-mentioned portion of the judgment is reversed.

Fox, P. J., and Herndon, J., concurred.