[No. C044681. Third Dist. Dec. 28, 2004.]

WELLS FARGO BANK, N.A., Plaintiff and Respondent, v.
ARDITH ZINNEL, Defendant and Appellant.

## COUNSEL

Kinkle, Rodiger and Spriggs and Derian Eidson for Defendant and Appellant.

Murphy, Pearson, Bradley & Feeney, Gregory A. Bastian and Robert W. Lucas for Plaintiff and Respondent.

## OPINION

**DAVIS, J.**—Plaintiff Wells Fargo Bank (Wells) interpled Elite Power, Inc. (Elite), and Ardith Zinnel in order to determine the rights of the respective parties to an account in defendant Zinnel's name containing almost $90,000. Wells successfully brought a motion for release of the funds to defendant Zinnel, discharge of its liability to the defendants, and dismissal of the complaint. The trial court awarded Wells nearly $43,000 in legal fees from the interpled funds. Only defendant Zinnel timely appealed from the orders.[1]

On appeal, defendant Zinnel contends Wells did not satisfy the criteria for an interpleader action. She further asserts that Wells was not entitled to an

---

[1] As to the order for release/discharge/dismissal, Zinnel's appeal may be premature because the appellant's appendix contains only an unconformed unsigned order attached to a copy of the minute order. In light of our disposition, we need not decide whether to dismiss this aspect of the appeal for want of a signed order. (Code Civ. Proc., § 581d; undesignated section references are to this code.)

award of legal fees. Finally, she contends the trial court abused its discretion in the amount of legal fees it awarded. As we agree with the second argument, it moots her other contentions. Because Wells failed to deposit the amount in dispute with the court, we shall reverse the order awarding legal fees and otherwise affirm the trial court.

## BACKGROUND

According to the Statement by Domestic Stock Corporation filed in the trial court, Walt Zacharias is the sole officer and director of Elite (an electrical contracting firm). He opened a checking account with Wells in September 2001, presenting documentation of his status as the sole corporate officer and stockholder.

In November 2001, defendant Zinnel opened two Wells accounts in Elite's name with herself as the signatory. She had presented Wells with the purported minutes of a shareholders' meeting (at which Steve Zinnel, her son, was the only person present) that authorized her actions. She deposited a cashier's check from North Valley Precision Products for $162,500.[2]

In February 2002, Mr. Zacharias contacted Wells to contest defendant Zinnel's authority to open the two accounts. He told Wells that he was the sole shareholder of Elite, and Steve Zinnel did not have authority to act on Elite's behalf as a "majority stockholder." In a follow-up letter on March 29, he directed Wells to close the accounts; because "Elite Power Company makes no claim to the funds in the Accounts[,] Elite Power Company hereby authorizes Wells Fargo Bank to return the balance of the Accounts to Ms. Zinnel."

Shortly thereafter, Wells received a letter from Derian Eidson on behalf of her client, "the majority stockholder in Elite Power, Inc.," contesting the apparent decision of Wells to place a hold on the funds in the accounts that defendant Zinnel had opened. The attorney noted, "there is a stockholder disagreement between the shareholders of Elite Power, Inc. However, Wells Fargo is not the trier of fact nor the unilateral holder of the funds." The letter directed Wells to close the two accounts and mail cashier's checks for the full balances payable to Elite Power, Inc., at the address of record on each account.

In its letter responding to Attorney Eidson, Wells invoked its authority to freeze funds while investigating unauthorized activities on an account. Although it had considered resorting to interpleader to resolve the claims of the

---

[2] We have denied the motions of North Valley Precision Products and its principal to intervene for the first time on appeal as amici curiae.

Elite factions, Wells was now satisfied that Mr. Zacharias had challenged only the authority of defendant Zinnel to open the accounts in the name of Elite, and was not making any claim personally or on behalf of Elite to the funds themselves. Therefore, Wells would close the accounts and transfer the funds to defendant Zinnel's personal account (an action no one had requested). However, because of an unrelated dispute between defendant Zinnel and Wells about an overdraft on a business account for which she was the sole signatory, Wells would be placing a hold on part of the transferred funds.

Wells then received a letter from Ilene Block on behalf of defendant Zinnel contesting the hold on $89,000 of the funds in defendant Zinnel's personal account for an overdraft in the account of a company for which she did not have any personal liability. Attorney Block demanded that Wells allow defendant Zinnel to withdraw the full amount of the funds from the closed Elite account in the form of a cashier's check payable to Elite. In follow-up letters in April, Attorney Block directed Wells to close all four of her client's accounts and make the balances of three accounts payable in the form of cashier's checks to defendant Zinnel, with the proceeds of the fourth account to be payable in cash; in a subsequent June letter, Attorney Block (now with a law firm) again criticized Wells for placing funds that did not belong to defendant Zinnel in her personal account and then putting a hold on these funds (despite the disclaimer of Mr. Zacharias to any interest in them) in connection with an unrelated overdraft for which she was not liable.

In its response, Wells claimed it could not release funds to defendant Zinnel that she admitted did not belong to her. The letter did not explain why this rationale did not apply to the balance of the original $162,500 funds above the frozen $89,000 that happened to represent the unrelated overdraft liability.

On behalf of Elite, Attorney Block's law firm filed an arbitration complaint against Wells in August 2002 pursuant to the arbitration agreement for the Elite account that defendant Zinnel had opened. It alleged that an $89,000 overdraft occurred on a company account for which defendant Zinnel provided accounting services but in which she had no personal interest. As a result of a dispute between the majority Elite shareholder, alleged to be Steve Zinnel, and the minority Elite shareholder, alleged to be Mr. Zacharias, Wells had closed the Elite account. Despite the disclaimer of Mr. Zacharias of any claim to the funds and the direction from Steve Zinnel through counsel (apparently Attorney Eidson) to make the funds payable to Elite, Wells placed the funds in defendant Zinnel's personal account and then placed a hold on the account in an amount coinciding with the outstanding unrelated overdraft. As neither defendant Zinnel nor the company owing the overdraft made any claim to the funds, Elite demanded their return.

In September 2002, Attorney Block's law firm sent a letter to Wells opposing any attempt at filing an interpleader complaint in response to the arbitration. The letter asserted that the dispute was solely between Wells and Elite, as neither defendant Zinnel nor Mr. Zacharias made any claim to the funds. The letter demanded immediate return of the funds to Elite.

Claiming to be subject to conflicting demands because there were two groups purporting to act on behalf of Elite, Wells then filed the present action immediately thereafter. It did not deposit the funds with the court on its own (§ 386, subd. (c)), but moved for an order directing their deposit, discharging it from the action, and requesting about $2,000 for the reimbursement of reasonable costs and legal fees. Attorney Block's law firm responded with a letter confirming that neither of the Zinnels claimed the funds, and asserting that it would be satisfactory to its client, Elite, for Wells to send a cashier's check for the funds payable to defendant Zinnel.

Wells continued the hearing on its motion several times during settlement discussions. The proposed settlement, in which Elite would dismiss its pending arbitration, Steve Zinnel would hold Wells harmless, and Wells would pay the funds to defendant Zinnel, ultimately foundered despite agreement of all parties that the funds could be paid to defendant Zinnel. Attorney Eidson reappeared on behalf of defendant Zinnel, denied that she presently represented Steve Zinnel in any capacity, asserted that Attorney Block's law firm was defendant Zinnel's former counsel but no longer represented any party, and filed an answer to the complaint along with an opposition to the pending motion (in which she contested the appropriateness of interpleader because Wells was not a disinterested holder and there were no competing claims to the funds, and thus Wells also was not entitled to an award of costs and legal fees). The attorney representing Mr. Zacharias in the settlement discussions filed an opposition to the motion on behalf of Elite disclaiming any interest in the funds. Steve Zinnel sent a letter to Wells disclaiming any interest in the funds for himself or Elite or any objection to distribution of the funds to defendant Zinnel.

The court (Gray, J.) denied the motion in January 2003. At the hearing, the court faulted Wells for moving the original funds from one account to another and then putting a hold on part of them, rather than seeking to deposit the total amount with the court from the outset and seek interpleader. In its minute order, it stated, "Based upon the record presented, there is a potential that one or more of the defendants may assert claims against the moving party in relation to the fund. Thus, the court declines to discharge the moving party, award fees and costs, or realign the parties at this time, without prejudice to a renewed request [cf. *Pacific Loan Management Corp. v. Superior Court* (1987) 196 Cal.App.3d 1485, 1490 [242 Cal.Rptr. 547]

(denial of motion for discharge does not preclude subsequent motion for summary judgment on same issue)]." Wells requested the default of Elite (as it had never filed an answer). Defendant Zinnel filed a cross-complaint, as to which the court later sustained the demurrer of Wells without leave to amend, but noted that its ruling did not prejudice Zinnel's ability to file an independent action against Wells.

Wells then brought a new motion in April 2003 for an order directing the release of the funds that it was currently holding, "the entitlement to which Wells Fargo believes is no longer in dispute,"[3] the discharge of its liability to the defendants, and the dismissal of its complaint. While consenting to the release of funds, defendant Zinnel otherwise opposed the motion in propria persona. The court (Cecil, J.) issued a minute order tentatively granting the motion: "Ms. Zinnel consents to having the funds released and there is agreement that there are no longer any conflicting claimants. The request to be discharged of liability [and] have the complaint dismissed . . . is also granted. This does not mean[,] however[,] that Ms. Zinnel is precluded, in another action, from seeking damages for the Bank's failure to release the funds to her." Taking the request for attorney fees under submission after the hearing, it confirmed the tentative ruling and agreed to decide the issue of entitlement to legal fees in a separate motion.

Wells moved for recovery of its legal fees. It also sought an order ex parte directing deposit of the funds with the court pending the ruling on the motion. The court issued an order directing Wells instead to remit $40,000 to defendant Zinnel, and authorizing it to retain the remainder until the hearing.

At the hearing, defendant Zinnel opposed an award of legal fees because there had never been a court order that sustained the propriety of interpleader; she argued that the absence of competing claims made interpleader unavailable. The court betrayed some confusion on that point, asserting that it believed "interpleader was sustained as appropriate long ago" in Judge Gray's ruling. After the hearing, the court sustained defendant Zinnel's objection to legal fees of about $2,000 incurred before the filing of the complaint. (*Sweeney v. McClaran* (1976) 58 Cal.App.3d 824, 830 [130 Cal.Rptr. 205].) It also found the number of billed hours excessive in a number of instances in an overall total of $4,000. It reduced the total of the requested fees accordingly.

---

[3] At the hearing, however, Wells sought an order permitting it to retain the funds until its request for costs and legal fees was adjudicated.

DISCUSSION

I

Defendant Zinnel contends that Wells was not entitled to maintain an interpleader action. She points out that regardless of the dispute over who spoke for Elite, all interested parties had agreed she was the proper recipient of the funds. In her view, the action was an effort to avoid liability for depositing money that belonged to another party in her personal account rather than returning it to Elite, then placing a hold on only a portion of the funds equal to an unrelated overdraft for which Wells believed she was liable (which belies any concerns Wells articulated about the true title to the balance of the $162,500). We need not resolve the issue for two reasons.

First, except for the deduction for costs and legal fees, defendant Zinnel has recovered the funds, and (as we subsequently discuss) Wells was not entitled to reimbursement, so she will recover the remainder. Second, the present action did not impair her right to pursue an action for consequential damages against Wells for wrongful withholding of the funds. (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 612–614 [109 Cal.Rptr.2d 256] (*Pietak*).) As a result, the right of Wells to interplead on these facts is only an academic question that we will not resolve.

II

■ "A party to an action who follows the procedure set forth in Section 386 . . . may insert . . . a request for allowance of his costs and reasonable attorney fees incurred in such action. In ordering the discharge of such party, the court may, in its discretion, award such party his costs and reasonable attorney fees from the amount in dispute *which has been deposited with the court*." (§ 386.6, subd. (a), italics added.)

Defendant Zinnel contends Wells was not entitled to an award of its costs and legal fees because it did not comply with the requirement that the award can come only from funds deposited with the court. Authority, though sparse, appears to concur.

In *Phillips v. Barton* (1962) 207 Cal.App.2d 488 [24 Cal.Rptr. 527] (*Phillips*), a remorseful buyer sought the recovery of his deposit from the seller and the broker. (*Id.* at p. 490.) Although describing himself as a "mere stakeholder," neither the broker's answer nor his cross-complaint to recover his commission sought the remedy of interpleader, and he did not deposit the funds into court. He thus was not allowed to recover his legal fees under section 386.6. (207 Cal.App.2d at pp. 495–496.)

Although the defendant in *Phillips* had not complied at all with the interpleader procedures, in *Big Bear Properties, Inc. v. Gherman* (1979) 95 Cal.App.3d 908 [157 Cal.Rptr. 443] (*Big Bear*), the interpleading judgment debtors deposited the bulk of a judgment into court, disputing the amount of interest that had accrued on it. (*Id.* at p. 911.) They waived their right to recover legal fees from the undisputed amount of the judgment. (*Id.* at p. 912.) The trial court found them liable for additional interest on the judgment and apportioned it among the claimants. (*Id.* at pp. 912–913.) The interpleaders sought to recover their legal fees pursuant to section 386.6 on the ground they had not waived this right as to their additional deposit. "The reservation of their right to claim attorneys' fees from the disputed portion of the judgment, which was not paid into court, did not make plaintiffs eligible for an award of such fees under section 386.6." (95 Cal.App.3d at p. 916.)

Wells offers one sentence of analysis of its eligibility for legal fees under section 386.6: "Here, Wells Fargo brought its complaint under the interpleader statutes, and the court properly granted its motion for discharge of liability. Accordingly, the trial court properly granted attorney fees to Wells Fargo under the provisions of Section 386.6." This "analysis" ignores the absence of any order determining the right to interplead or directing the deposit of the funds, it does not explain why we may disregard the statutory language emphasized above, it ignores the holding of *Phillips* that it had cited a page earlier, and it cites the same page in *Big Bear* (for the standard of review) but does not acknowledge its holding regarding the necessity of a deposit of the funds (as defendant Zinnel points out in her reply brief).

The statutory prerequisite of a deposit with the court is not pointless. A true stakeholder who promptly surrenders the possession of a disputed fund should not bear the costs and legal fees of responding to competing claims. On the other hand, a stakeholder who enjoys the beneficial use of funds that belong to others should not reap the same advantages absent a judicial determination that interpleader was proper through an order dismissing the stakeholder and directing the deposit of the held funds into court (from which the court in its discretion can award costs and legal fees if appropriate).[4] In the present case, ignoring the five months that Wells held almost $90,000 before even filing this action, Wells held the funds for an additional eight months until the final order dismissing the complaint without ever depositing them on its own with the court. Its approach was more adversarial than disinterested. As a result, we do not see any injustice in insisting on compliance with the exact letter of section 386.6.

---

[4] This is ordinarily the first step in an interpleader action, after which the court then adjudicates the competing claims. (4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 230, pp. 293–294; *Pietak, supra,* 90 Cal.App.4th at p. 612.)

At oral argument, Wells asserted that it is inequitable to fault it for failing to deposit the funds in court when defendant Zinnel opposed the motion before Judge Gray (the sole time that Wells made an effort to deposit them). This opposition to a deposit of funds, however, was merely a corollary of defendant Zinnel's argument that Wells did not have the right to interplead because Wells was not a mere stakeholder and there were no rival claims, and thus the funds should be released to her. To the extent she opposed an award for legal fees before Judge Gray, it was for the failure to comply with the substantive requirements of section 386. She is not arguing now that interpleader was unwarranted because her opposition to interpleader prevented Wells from depositing the funds. (Cf. *Simas v. Conselho Supremo* (1920) 184 Cal. 511 [194 P. 1001] [our Supreme Court reversed the denial of a defendant's motion for deposit and dismissal and would not allow the plaintiff claimant to make the circular argument that the *consequence* of the denial of a motion that the plaintiff opposed (the absence of a deposit) was a basis for affirming it].) She thus does not argue from both sides of her mouth in this court in relying on the absence of a deposit to defeat the award of legal fees.

Moreover, as we have noted above, nothing prevented Wells from depositing the funds with the court on its own without a court order at *some* point before obtaining the dismissal of its complaint. Section 386, subdivision (c) provides, "Any amount which a plaintiff . . . admits to be payable may be deposited by him with the clerk of the court at the time of the filing of the complaint . . . in interpleader without first obtaining an order of the court therefor. Any interest on amounts deposited and any right to damages for detention of property so delivered, or its value, shall cease to accrue after the date of such deposit . . . ." The opposition of defendant Zinnel to the motion for deposit was thus immaterial.

Wells suggested at oral argument, however, that its failure to deposit the funds at the time it filed the complaint precluded it from doing so later without a court order. This misapprehends the reason for obtaining a court order when depositing funds into court.

■ Under the common law, the deposit of funds voluntarily with the court did not put the funds "in the custody of the law," and thus left them subject to attachment. (*Colver v. W. B. Scarborough Co.* (1925) 73 Cal.App. 455 [238 P. 1110].) This rule applied to interpleader actions under the 1881 version of § 386 (Stats. 1881, ch. 23, § 1, p. 19), which did not include the provisions in present subdivision (c) regarding deposits without court order. (*Kimball v. Richardson-Kimball Co.* (1896) 111 Cal. 386, 394 [43 P. 1111]; *Durkin v. Durkin* (1955) 133 Cal.App.2d 283, 293–294 [284 P.2d 185] [apparently applying prior law]; *Van Orden v. Anderson* (1932) 122 Cal.App.

132, 141 [9 P.2d 572].) However, in 1951, the Legislature enacted the substance of present subdivision (c) to the statute (along with other changes). (See Stats. 1951, ch. 1142, § 1, pp. 2911–2912.)

■ We assume the Legislature intended to depart from the common law in amending the statute in this particular manner. (*Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].) By enabling interpleading parties to deposit funds with the court voluntarily (without fear of attachment) and thereafter limit their ongoing liability to claimants, the Legislature simplified and strengthened the remedy.[5]

■ The question is whether the Legislature intended to limit the power to make a voluntary deposit without court order *only* to "the time of the filing of the complaint" (§ 386, subd. (c)) or if this simply reflects an assumption on the Legislature's part that this is when a voluntary deposit would ordinarily occur. In the somewhat analogous context of statutory procedural time limits, it is usually presumed these are "directory" rather than jurisdictional unless the Legislature has imposed a consequence or penalty for the failure to take timely action. (*Estate of Stehr* (1986) 181 Cal.App.3d 1131, 1134–1135 [226 Cal.Rptr. 806].) Here, the statute allows for the voluntary deposit of funds along with the complaint, but does not otherwise suggest this power is limited to a contemporaneous deposit or expressly provide that thereafter the deposit must be pursuant to a court order. We do not find such an interpretation of the statute to be in accordance with the legislative trend in favor of flexibility in interpleader procedures. ■ Thus, defendant Zinnel's opposition to the sole effort of Wells to deposit the funds does not excuse Wells from the requirement that legal fees can be awarded only out of deposited funds.[6]

### Disposition

The order awarding Wells its costs and legal fees is reversed. In all other respects, the orders of the trial court are affirmed. Appellant is awarded costs of appeal.

Blease, Acting P. J., and Robie, J., concurred.

---

[5] This trend toward expanding the reach of interpleader was also the impulse behind the 1975 legislative amendments to section 386. (4 Witkin, Cal. Procedure, *supra*, Pleading, § 217, p. 282.)

[6] In light of our disposition, we need not decide whether the trial court abused its discretion in awarding Wells nearly half of the disputed fund in costs and legal fees.